Gerald J. McDERMOTT, Appellant,

v.

Kathleen D. CRONIN, Appellee.

No. 01–99–00027–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 13, 2000.

Rehearing Overruled Nov. 10, 2000.

618

Farrell Bolz, Houston, for Appellant.

Glenn A. Ballard, Jr., Tracy C. Temple, Houston, for Appellee.

Panel consists of Justices O'CONNOR, WILSON, and ANDELL.

## OPINION

DAVIE L. WILSON, Justice.

This is an interlocutory appeal from the denial of a special appearance. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2000); TEX.R. CIV. P. 120a. We must decide whether Texas has personal jurisdiction over a nonresident defendant in a real estate dispute over land in Belize when payments were made to a post office box in Houston. We affirm.

### Facts

Appellant Gerald J. McDermott and his former wife Linda McDermott are the sole shareholders of Maya Ranch Limited, a Belize corporation that sells land in Belize. Gerald, a former Houston resident, moved to Belize in 1970. Linda still resides in Houston. On May 19, 1993, appellee Kathleen D. Cronin, a Hawaii resident, signed a contract for sale of land in Belize. Gerald signed the contract on behalf of Maya Ranch, and under his signature the contract listed Maya Ranch's address as "P.O. Box 42809–400, Houston, Tx. 77242." Cronin later moved to Vermont and continued making payments to Maya Ranch by sending checks to the Houston post office box. Linda collected the checks from the post office box.

Maya Ranch later sold the remainder of its property to Bridget Wallraf and Michael Wallraf. The Wallrafs made a claim to all of Maya Ranch, including Cronin's land. Cronin notified Gerald about the Wallrafs' claim, and she stopped making payments to Gerald under the contract for

sale. Gerald then had his secretary send the following letter to Cronin:

GERALD J. MCDERMOTT

P.O. BOX 42809–400

HOUSTON, TX 77242

November 21, 1996

Kathleen D. Cronin

P.O. Box 1562

Stowe, Vermont 05672

Dear Ms. Cronin:

Received your faxes this morning. I enclose herewith a copy of the letter from Mr. Barrow.

Our attorneys said that this action is outrageous. We have filed suit and are waiting on a Court date right now.

Please do not worry about the validity of your contract. I personally guarantee you will suffer no loss.

Respectfully Yours, ·

/s/ *Cherry Reyes for Gerald McDermott*

Gerald J. McDermott

GJM/rlr

Gerald claims he did not review the letter before it was mailed.

When the Wallrafs denied Cronin access to the land, she sued Gerald in Harris County, claiming fraudulent inducement and breach of the guaranty. Gerald filed both a special appearance contesting the trial court's personal jurisdiction over him and a motion to dismiss based on forum non conveniens. The trial court denied both the special appearance and the motion to dismiss based on forum non conveniens.

## Discussion

█ In issue one, Gerald contends his special appearance should have been granted because Cronin's petition does not allege that Gerald committed a specific act in Texas and because Gerald proved he is a nonresident of Texas. *See Hotel Partners v. KPMG Peat Marwick, Chartered Accountants,* 847 S.W.2d 630, 634 (Tex.

App.—Dallas 1993, writ denied). We disagree.

### Defective Pleading Allegations

█ In her petition, Cronin does allege that "[v]enue is proper in Harris County, Texas, because all or a substantial part of the events or omissions giving rise to plainiff's claims occurred in Harris County, Texas." Even if we assume that Cronin's pleading was inadequate to establish the requisite jurisdictional facts, a plaintiff's failure to make jurisdictional allegations in her pleadings is not subject to attack by the specially appearing defendant. *Id.; see Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 202–03 (Tex. 1985). Gerald, the nonresident defendant, had the burden to negate all bases of personal jurisdiction at the special appearance hearing. *Hotel Partners,* 847 S.W.2d at 634. Without jurisdictional allegations by a plaintiff that a defendant committed an act in Texas, the defendant can meet his burden of proof of negating all purported bases of jurisdiction by presenting evidence that he is not a Texas resident. *Id.*

We overrule issue one.

### No Personal Jurisdiction

In issue two, Gerald contends his special appearance should have been granted because he does not have specific contacts with Texas to authorize in personam jurisdiction. In the alternative, Gerald contends that even if jurisdiction is proper, exercising jurisdiction in this case would offend traditional notions of fair play and substantial justice.

█ On appeal from a special appearance, we review all evidence in the record to determine if the nonresident defendant negated all possible grounds for personal jurisdiction. *James v. Illinois Cent. R.R.,* 965 S.W.2d 594, 596 (Tex.App.—Houston [1st Dist.] 1998, no pet.); *see Kawasaki,* 699 S.W.2d at 203. To sustain a special appearance, the nonresident defendant must negate all bases of personal jurisdic-

tion. *CSR Ltd. v. Link,* 925 S.W.2d 591, 596 (Tex.1996).

For Texas courts to exercise jurisdiction over a nonresident defendant, the Texas long-arm statute must authorize the exercise of jurisdiction, and the exercise of that jurisdiction must be consistent with federal and state guarantees of due process. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 356 (Tex.1990). The Texas long-arm statute authorizes the exercise of jurisdiction over nonresidents who do business in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). Finally, the Texas long-arm statute reaches as far as the federal and state constitutional guarantees of due process and due course of law allow. *CSR Ltd.,* 925 S.W.2d at 594.

Personal jurisdiction can be either specific or general. *CSR Ltd.,* 925 S.W.2d at 595. Specific jurisdiction occurs when a defendant's alleged liability arises from or is related to an activity conducted within the forum state. *Id.* General jurisdiction occurs when a nonresident defendant's contacts are continuous and systematic, allowing the forum state to exercise personal jurisdiction over the defendant even if the cause of action did not arise out of the contacts with the state. *Id.* General jurisdiction requires more substantial contact with the forum state. *Id.* In either case, a nonresident defendant must have minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

Interpreting opinions of the United States Supreme Court, the Texas Supreme Court has devised the following Texas formula for specific jurisdiction:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

(2) The cause of action must arise from, or be connected with, such act or transaction. Even if the cause of action does not arise from a specific contact, jurisdiction may be exercised if the defendant's contacts with Texas are continuing and systematic.

(3) The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*Schlobohm,* 784 S.W.2d at 358.

### Minimum Contacts

The first two prongs of the *Schlobohm* test apply to the minimum contacts analysis. *See id.* A nonresident defendant has sufficient minimum contacts if he has purposely availed himself of the benefits and protections of conducting business within the forum state. *CSR Ltd.,* 925 S.W.2d at 594–95. This limitation prevents a nonresident defendant from being brought into a foreign court based on random, fortuitous, or attenuated contacts. *Id.* at 595. Based upon his contact with the forum state, a defendant must reasonably expect to be haled into a Texas court. *Project Eng'g USA Corp. v. Gator Hawk, Inc.,* 833 S.W.2d 716, 721 (Tex.App.—Houston [1st Dist.] 1992, no writ). Minimum contacts are especially important when dealing with a nonresident defendant from a foreign country. *CSR Ltd.,* 925 S.W.2d at 595.

In analyzing minimum contacts, it is not the number of the nonresident defendant's contacts with the forum state that is important, but rather the quality and nature of those contacts. *Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc.,* 835 S.W.2d 645, 650 (Tex.App.—Houston [14th Dist.] 1992, no writ). A nexus is necessary for the assertion of jurisdiction in those

instances in which a nonresident defendant maintained single or few contacts with the forum. *Id.* Although the extent of a nonresident defendant's contacts with the forum state may be minimal, the quality and nature of those contacts may be substantial. *Id.*

 The Texas long arm statute provides that a nonresident does business in Texas if the nonresident commits a tort in whole or in part in this state. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). Cronin's petition alleges a cause of action for fraudulent inducement arising out of a letter bearing a Texas address.

 The mere fact that a tort was committed in Texas does not automatically confer personal jurisdiction over a nonresident defendant. *Memorial Hosp. Sys.*, 835 S.W.2d at 650. In determining whether a nonresident defendant purposefully established minimum contacts with the forum state, foreseeability should be considered. *Guardian Royal Exch. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 227 (Tex.1991). By using a Texas mailing address on both correspondence and contracts, Gerald certainly could have foreseen being sued in a Texas court. We hold that a strong nexus exists between the tort that allegedly occurred in Texas and the contact with Texas, *i.e.*, the mailing address, and that this contact is a specifically affiliating minimum contact.

### Fair Play and Substantial Justice

 We now decide if fair play and substantial justice requires the trial court to grant Gerald's special appearance notwithstanding the existence of a specifically affiliating minimum contact. We consider the following factors: (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Guardian Royal Exch.*, 815 S.W.2d at 228.

*1. The burden on the defendant* Gerald claims there will be a substantial burden on him and any witnesses to travel from Belize to Houston for the trial. At the hearing on the special appearance, Gerald admitted that he still visits Texas for both business and personal reasons even though he has lived in Belize since 1970. Gerald does not argue specific facts to demonstrate the extent of any financial hardship that a Houston trial would impose on him.

*2. The interests of the forum state in adjudicating the dispute* Gerald next argues that Texas has no interest in this case because (1) neither Gerald nor Cronin are Texas residents and (2) the property at issue is in Belize. It is undisputed, however, that Cronin made her payments for the land to the Houston address and there is evidence that Gerald made the November 21, 1996 personal guaranty in Texas.

*3. The plaintiff's interest in obtaining convenient and effective relief* Gerald argues that Cronin has no interest in maintaining her suit in Texas because she will have to execute any Texas judgment she may receive in Belize. Cronin counters that she will conduct postjudgment discovery in order to locate any Texas assets that may be available.

*4. The interstate judicial system's interest in obtaining the most efficient resolution of controversies* Gerald and Cronin agree this factor is inapplicable because this is an international dispute.

*5. The shared interest of the several states in furthering fundamental substantive social policies* Gerald and Cronin agree this factor is likewise inapplicable because this is an international dispute.

After considering the applicable factors, we hold that fair play and substantial justice does not require the trial court to grant Gerald's special appearance, despite

the existence of a specifically affiliating minimum contact. We overrule issue two.

**Findings of Fact and Conclusions of Law**

In issue three, Gerald challenges the trial court's findings of fact and conclusions of law. When the trial court makes findings of fact, the findings are reviewed on appeal using the factual sufficiency standard. *Nikolai v. Strate*, 922 S.W.2d 229, 236 (Tex.App.—Fort Worth 1996, writ denied). The existence of personal jurisdiction is a question of law, and the trial court's conclusions of law are reviewed de novo. *James*, 965 S.W.2d at 594.

Gerald first challenges Cronin's evidence at the special appearance hearing, specifically, Cronin's verified response to the special appearance. Gerald claims the verified response is deficient because it is not based on Cronin's personal knowledge. Gerald has waived this complaint, however, because he did not obtain an adverse ruling from the trial court. *See* TEX.R.APP. P. 33.1(a). But even if Gerald had not waived this complaint, Cronin's affidavit recites that she has personal knowledge of the facts contained in the response.

Gerald next challenges specific findings of fact. The trial court's findings of fact are reviewable for factual sufficiency of the evidence by the same standards as applied in reviewing the factual sufficiency of the evidence supporting a jury verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex.1991). When reviewing a jury verdict to determine factual sufficiency, we must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *see also Pool v. Ford Motor Co.*, 715 S.W.2d 629, 633–35 (Tex. 1986). *See generally* William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence"*, 69 TEX. L.REV. 515 (1991).

*Finding number 1*

Pursuant to an Agreement of Sale dated May 19, 1993 (the "Agreement"), Cronin purchased a tract of land in the Maya Ranch Estates located in the Cayo District of Belize ("the Premises"), from Maya Ranch Limited ("MRL"). The Agreement is signed by McDermott and states that the seller's address is a P.O. Box in Houston, Texas.

Gerald attacks this finding on the grounds that it goes beyond controlling legal issues and it makes a legal conclusion that Cronin actually purchased land in Belize.

*Finding number 2*

Pursuant to the Agreement, the parties agreed that Cronin was immediately entitled to possession and enjoyment of the Premises. In addition, MRL and McDermott promised that Cronin would be entitled to use the guest house located in the Maya Ranch Estates. Cronin agreed to pay MRL a total of $24,500.00, representing a down payment of $2,500.00 and 120 monthly payments of $284.27 commencing on June 1, 1993, including ten percent interest per annum. The parties further agreed that, upon Cronin's completion of these payment obligations, MRL would deliver to Cronin clear title to the Premises, free and clear of all encumbrances and liens. Payments under the Agreement were to be made by Cronin to an address in Texas.

Gerald attacks this finding on the ground that it goes beyond controlling legal issues and that the following statement is unsupported by any evidence: "In addition, MRL and McDermott promised that Cronin would be entitled to use the guest house located in the Maya Ranch Estates."

*Finding number 3*

During the negotiation of the Agreement, MRL's principal, McDermott, as-

sured Cronin that her investment was safe and that he would personally guaranty MRL's performance of all aspects of the Agreement. McDermott made this guarantee in writing *from Texas*. Based on McDermott's guarantee, Cronin entered into the Agreement, paid the down payment amount of $2,500, and began making monthly payments under the Agreement to the P.O. Box in Texas. Cronin would not have entered into the Agreement absent McDermott's guarantee.

Gerald contends there is insufficient evidence to support the finding that "McDermott made this guarantee [the November 21, 1996 letter] in writing *from Texas*" because the contract for sale was negotiated on or before May 19, 1993. Assuming the reference to the contract for sale to be a mistake, Gerald then claims the evidence is factually insufficient to support a finding that his letter guaranty was made from Texas. Gerald relies on his testimony from the special appearance hearing in which he testified that the letter was drafted by his secretary and mailed from Belize.

*Finding number 4*

In September 1995, McDermott and his wife, Linda J. McDermott, sold numerous tracts of the Maya Ranch Estates to a single third party. The tracts sold by defendant included tracts adjacent to and surrounding the Premises. Upon learning of the sale, Cronin contacted McDermott to inquire about the details and the effect of the sale on her ownership of the Premises. Despite Cronin's numerous inquiries, McDermott could not verify whether the Premises were included in the sale. The correspondence between Cronin and McDermott reveals that Cronin wrote to McDermott *in Texas* and that McDermott responded to Cronin's inquiries *from Texas*. Cronin was placed in the position of not knowing who the title owner of the Premises was. Notwithstanding the confusion surrounding the ownership of the Premises, McDermott repeated that he would personally guarantee Cronin's investment in the Premises and her access to the Premises and guest house. Based on these representations, Cronin continued making monthly payments to Texas under the Agreement.

Gerald attacks this finding on the grounds that (1) it is a combination of findings of fact and conclusions of law and (2) it goes beyond controlling legal issues. Gerald specifically claims the evidence is factually insufficient to support the portion of the finding "that McDermott responded to Cronin's inquiries *from Texas*." Gerald cites his testimony that he never personally sent a letter to Cronin in Texas, and differentiates any letters he may have signed and/or sent in his capacity as a corporate representative of Maya Ranch.

*Finding number 5*

Despite the fact that Cronin has forwarded over fourteen thousand dollars in payments to Texas under the Agreement, McDermott has failed to perform his personal guarantee of the Agreement, and Cronin has been denied use of the Premises, the guest house, and has lost over $14,000.00 in payments she has made under the Agreement. McDermott claims he is not subject to the Court's jurisdiction based on an alleged lack of contacts with Texas. However, McDermott's special Appearance is without merit, since McDermott made his personal guarantee to Cronin from Texas and further induced Cronin to continue making payments to Texas. In addition, McDermott has established systematic and continuous contacts with Texas sufficient to support the exercise of general jurisdiction over McDermott. Accordingly, McDermott's special Appearance should be denied.

Gerald attacks this finding on the ground that it is a combination of findings of fact and conclusions of law.

We agree with Gerald that much of the findings of fact are either irrelevant to the

controlling issues or are in reality conclusions of law. To the extent that the findings contain relevant findings of fact pertaining to Gerald's personal contacts with Texas as discussed above in issues one and two, we hold that the findings are not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. In all other respects, we hold that the erroneous "findings" are not reversible error as they did not cause the rendition of an improper ruling on the special appearance. TEX.R.APP. P. 44.1(a)(1). Regarding the trial court's conclusions of law, we have already addressed these in our de novo review of the special appearance ruling.

We overrule issue three.

## Conclusion

We affirm the order of the trial court denying the special appearance.