Reversed and Dismissed and Opinion filed March 17, 2005









Reversed and Dismissed and Opinion filed March 17,
2005.

 




 
 
 
 
 
 
 




 

 

 

 

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-01289-CV

NO. 14-03-01290-CV

NO. 14-03-01293-CV

NO. 14-03-01294-CV

NO. 14-03-01295-CV

NO. 14-03-01305-CV

____________

 

AGOSTINO PERNA and MOBILE MEDICAL
TRAINING UNIT, L.L.C., Appellants

V.

LESLIE DIANE HOGAN, et al.,
Appellees

____________

 

AGOSTINO PERNA and MOBILE MEDICAL
TRAINING UNIT, L.L.C., Appellants

V.

JEAN BUTTS, Individually and as
Representative of the Estate of DOROTHY HEBERT, et. al., Appellees

____________

 

AGOSTINO PERNA and MOBILE MEDICAL
TRAINING UNIT, L.L.C., Appellants

V.

ROBERT BLAND, et al., Appellees

____________

 








AGOSTINO
PERNA and MOBILE MEDICAL TRAINING UNIT, L.L.C., Appellants

V.

RICARDO BILLESCAS, Individually and
as Representative of the Estate of IMELDA BILLESCAS ROMERO, et al., Appellees

____________

 

AGOSTINO PERNA and MOBILE MEDICAL
TRAINING UNIT, L.L.C., Appellants

V.

PATRICIA M. HARRISON, et al.,
Appellees

____________

 

AGOSTINO PERNA and MOBILE MEDICAL
TRAINING UNIT, L.L.C., Appellants

V.

TED BREEZY, Individually and as
Representative of the Estate of ELIZABETH ANN BREEZY, et al., Appellees

 



 

On Appeal from the 56th,
10th, 212th, and 122nd District Courts 

Galveston County, Texas

Trial Court Cause Nos. 03CV1493;
02CV0865; 02CV0955; 02CV1396; 02CV0820; and 03CV0871

 



 

O P I N I O N








A number of individuals donated their bodies[1]
to the Anatomical Board of the State of Texas (the AAnatomical Board@), the agency responsible for
overseeing the Willed Body Program in Texas. 
The Anatomical Board assigned the bodies to the University of Texas
Medical Branch at Galveston (AUTMB@).  After the donor
bodies were used for medical, science, and educational purposes, they were
cremated.  Appellees[2]Cmembers of the donors= familiesCallege that the ashes of the donor
participants= cremated bodies were either not
returned to them or were commingled with the cremated remains of other
donors.  








Appellees sued Agostino Perna (APerna@) and Mobile Medical Training Unit,
L.L.C. (AMobile Medical@), alleging that they bought and sold
human body parts and profited from such trade and that they purchased body
parts from UTMB and Allen Tyler, the supervisor of the Willed Body Program at
UTMB.  Appellees further alleged Perna
and Mobile Medical should have known that bodies and body parts they received
or purchased from Tyler were being transferred to them illegally and that any
resale was also illegal.  Appellees
brought claims for negligence, negligence per se, gross negligence, breach of
contract, constructive fraud, fraud, intentional infliction of emotional
distress, and vicarious liability, and sought actual and punitive damages.[3]  

Perna and Mobile Medical filed special appearances, which the
pretrial court denied.  In this
interlocutory appeal, Perna and Mobile Medical appeal the pretrial court=s order denying their respective
special appearances.[4]  We reverse the order of the pretrial court
and dismiss these six cases against Perna and Mobile Medical.

A Texas court may exercise jurisdiction over a nonresident if
two conditions are satisfied.  First, the
Texas long‑arm statute must authorize the exercise of jurisdiction.  Second, the exercise of jurisdiction must be
consistent with federal and state constitutional guarantees of due process.  American Type Culture Collection, Inc. v.
Coleman, 83 S.W.3d 801, 806 (Tex. 2002), cert. denied, 537 U.S. 1191
(2003); Schlobohm v. Schapiro, 784 S.W.2d 355, 356 (Tex. 1990).  

The
Texas long‑arm statute authorizes the exercise of jurisdiction over a
nonresident defendant who does business in Texas.  Tex.
Civ. Prac. & Rem. Code Ann. ' 17.042 (Vernon 1997).  The Texas long-arm statute specifically
provides:

In addition to other acts that may constitute doing
business, a nonresident does business in this state if the nonresident:

(1) contracts by mail or otherwise with a Texas
resident and either party is to perform the contract in whole or in part in
this state;

(2) commits a tort in whole or in part in this state;
or

(3)
recruits Texas residents, directly or through an intermediary located in this
state, for employment inside or outside this state.








Id.  While the statute enumerates several
specifics acts constituting Adoing business,@ it also includes Aother acts that may constitute doing
business.@ 
Schlobohm, 784 S.W.2d at 357. 
The Adoing business@ requirement permits the statute to
reach as far as the federal constitutional requirements of due process will
allow.  Guardian Royal Exchange
Assur., Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex.
1991).  

The plaintiff has the initial burden of pleading sufficient
allegations to bring the nonresident defendant within the provisions of the
Texas long‑arm statute.  Coleman,
83 S.W.3d at 806; BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789,
793 (Tex. 2002).  The nonresident
defendant then has the burden of negating all bases of personal
jurisdiction.  National Indus. Sand
Ass'n v. Gibson, 897 S.W.2d 769, 772 (Tex.1995).  If the plaintiff does not plead
jurisdictional allegations, i.e., that the defendant has committed any
act in Texas, the defendant can satisfy its burden of negating all bases of
personal jurisdiction by presenting evidence that it is a nonresident at the
special appearance hearing.  Experimental
Aircraft Ass=n, Inc. v. Doctor, 76 S.W.3d 496, 502 (Tex. App.CHouston [14th Dist.] 2002, no pet.); M.G.M.
Grand Hotel, Inc. v. Castro, 8 S.W.3d 403, 408 n.2 (Tex. App.CCorpus Christ 1999, no pet.); Hotel
Partners v. KPMG Peat Marwick, 847 S.W.2d 630, 634 (Tex. App.CDallas 1993, writ denied).

Perna and Mobile Medical argue appellees= pleadings do not support the
exercise of long-arm jurisdiction.  In
their various petitions, appellees allege that Allen Tyler of UTMB illegally
transferred and/or sold bodies and/or body parts that were willed to UTMB to
Perna and Mobile Medical so that they could resell them to for-profit medical
equipment and training companies and private labs and hospitals.  It was also alleged that Perna and Mobile
Medical breached the duty to use ordinary care in ascertaining the origins of
body parts provided by or purchased from Tyler, to refrain from acquiring,
reselling, or disposing of body parts, and to treat the donors= bodies with dignity and respect, and
to return the ashes of the donors to designated family members.  








We find appellees have not alleged facts in their petitions
bringing Perna and Mobile Medical within the Texas Long Arm Statute, i.e.,
that Perna or Mobile Medical committed any act in Texas.  However, a plaintiff=s failure to make jurisdictional
allegations in the petition is not subject to attack by the specially appearing
defendant.  Kawasaki Steel Corp. v.
Middleton, 699 S.W.2d 199, 202B03 (Tex. 1985); McDermott v.
Cronin, 31 S.W.3d 617, 620 (Tex. App.CHouston [1st Dist.] 2000, no pet.).  But while the specially appearing defendant
cannot attack the plaintiff=s petition, the defendant can meet his burden of proof in
such cases by simply presenting evidence that he is not a Texas resident.  McDermott 31 S.W.3d at 620.    Because appellees did not allege that Perna
or Mobile Medical committed any act in Texas, Perna and Mobile Medical
satisfied their burden to negate all bases of personal jurisdiction by presenting
evidence demonstrating that they are non-residentsCa fact no one seems to dispute.

However, even if appellees had alleged facts in their
respective petitions demonstrating acts in Texas (as they subsequently did in
their responses to the special appearances), the evidence adduced at the
special appearance hearing falls short of bringing Perna and Mobile Medical
within the ambit of the Texas Long Arm Statute.   








Perna and Mobile Medical filed special appearances asserting
the trial court lacked personal jurisdiction over them.  The Bland and Harrison
plaintiffs filed identical responses to Perna=s and Mobile Medical=s special appearances.  The Billescas and Breezy
plaintiffs adopted the Harrison plaintiffs= response by reference.  In their response to the special appearances,
the Harrison/Billescas/Bland/Breezy plaintiffs
asserted that Perna personally came to Texas over the course of four years and
illegally purchased 300 cadavers from UTMB and Southwestern University.[5]  They also asserted that Perna solicited
business in Texas, conducted seminars in Texas, and contracted with a Texas
citizen, Allen Tyler, to perform work both in and outside Texas.  The Harrison/Billescas/Bland/Breezy
plaintiffs further claimed that Perna paid Tyler $80,000 for his work and Tyler=s invoices were mailed from Texas and
Perna mailed Tyler=s payments to Texas. 
The record contains no response to the special appearances by the Hogan
plaintiffs.  

Although the Harrison/Billescas/Bland/Breezy
plaintiffs= responses cite to Perna=s deposition as evidentiary support,
the deposition transcript was neither attached to those responses nor otherwise
filed in the pretrial court.  Moreover,
at the hearing on the special appearances, no evidence was offered by
appellees; instead, the appellees referred the pretrial court to the written
responses on file with the court.  

The Butts and Breezy plaintiffs filed Amotions to confer jurisdiction@ in which they complained they had
been denied the opportunity to fully develop issues regarding jurisdiction and
contacts because of Perna and Mobile Medical=s failure to cooperate with the
discovery process.  Specifically, they
complained of Perna=s failure to provide documents in response to discovery and
challenged the truthfulness of his interrogatory answers on behalf of Mobile
Medical.  Attached to the motions to
confer jurisdiction were excerpts from Perna=s deposition that mostly concern
appellees= trial counsel=s attempts to determine the veracity
of his answers to interrogatories.  

Submitted
in support of Perna=s and Mobile Medical=s special appearances were excerpts
from Perna=s deposition and the affidavits of
Perna, in his individual capacity and as an officer of Mobile Medical.  Perna states in his individual affidavit that
he: 

$          is a
New Jersey resident, and is not and has never been a resident of Texas; 

$          has
never maintained a registered agent in Texas; 

$          has
never had any employees or agents, in his individual capacity, in Texas; 

$          has
never maintained an office, mailing address, or telephone number in Texas; 

$          has
never owned any assets, maintained a bank account, or owned, leased or
controlled any real or personal property in Texas; 








$          has
never paid or been required to pay taxes in Texas; 

$          has
never in his individual capacity entered into a contract or conducted any
business with any Texas business, citizen or resident; 

$          has
never entered in any contract with UTMB, Allen Tyler, or any other employee or
agent of UTMB; and

$          has
never held any board of director=s, officer=s, or other official meeting in
Texas. 

Perna states that UTMB has supplied human torsos for medical
seminars conducted in states other than Texas. 
Perna also explains that another entity, IMET (Innovations in Medical
Education and Training, L.L.P.), a medical conference coordinator, arranges for
the leasing of human torsos for medical training seminars.  Mobile Medical takes temporary custody of
torsos during a medical seminar, but Perna does not, in his individual
capacity, take custody of torsos or arrange for their shipment or disposition,
but only as an employee or officer of one of these entities.  Perna states that the torsos are leased for
use at medical seminars and remain the property of UTMB.  Another entity, SBF (Surgical Body Forms),
which furnishes video equipment and surgical equipment and instruments for use
at medical seminars, paid Allen Tyler an honorarium for consulting work and
preparing torsos for presentation at medical seminars.

Perna further states in his affidavit that he has not
appeared in Texas in his individual capacity. 
Instead, on each of the three occasions Perna was in Texas, his presence
was as an employee or officer of IMET, Mobile Medical, A. Perna Consulting or
SBF.  Perna explains that he was in
Houston on two occasions when IMET conducted medical seminars at Baylor College
of Medicine in November 2001, and in May 2002. 
Perna was in Dallas on one occasion to meet with Melinda More at
Southwestern University/Medical School on behalf of IMET concerning the amount
of lead time the school would need to furnish a torso to a seminar.








Perna also states that none of the torsos used at the two
medical seminars in Houston at which he was present correspond to any of the
SAB[6]
numbers for the bodies of the donors at issue here.  Perna admits, however, that the SAB numbers
corresponding to the bodies of Catherine Bland, Ruth Black, Linda Porritt, and
Scherri Maxine Tompkins were furnished to other seminars (not necessarily in
Texas) involving Mobile Medical, IMET, A. Perna Consulting, and/or SBF.  

According to Perna, when UTMB furnished a torso for a
seminar, UTMB paperwork dictated that after the completion of the seminar, the
torso was to be cremated in the state where the seminar was conducted, and the
ashes disposed of in accordance with the laws of that state.  UTMB did not require that the ashes be
returned to Texas.  

In
his capacity as an officer of Mobile Medical, Perna states that Mobile Medical:

$          is a
New Jersey limited liability company, which does not and has never been
required to maintain a place of business in Texas, but, instead, maintains its
offices in Pennsylvania where it conducts its business operations;  

$          is not
required to and has never maintained a registered agent in Texas; 

$          except
in November 2001, and May 2002, when IMET conducted two medical seminars at
Baylor College of Medicine in Houston, does not have and has never had any
employees or agents in Texas; 

$          has
never maintained an office, mailing address, or telephone number in Texas; 

$          has
never owned any assets or maintained a bank account in Texas; 

$          has
never paid or been required to pay taxes in Texas; 

$          except
for certain torsos it leased from the Willed Body Programs of UTMB and
Southwestern University has never owned, leased, rented or controlled any real
or personal property in Texas; and 

$          has
never held any board of director=s, officer=s or other official meeting in Texas.









Perna claims the evidence is legally and factually
insufficient to support the pretrial court=s findings of fact.  Whether the court has personal jurisdiction
over a nonresident defendant is a question of law, but the proper exercise of
such jurisdiction is sometimes preceded by the resolution of underlying factual
disputes.  Coleman, 83 S.W.3d at
805B06; BMC Software, 83 S.W.3d at
794; C-Loc Retention Sys., Inc. v. Hendrix, 993 S.W.2d 473, 476 (Tex.
App.CHouston [14th Dist.] 1999, no
pet.).  

If the trial court enters an order denying a special
appearance, and issues findings of fact and conclusions of law, the appellant
may challenge the findings of fact on legal and factual sufficiency
grounds.  BMC Software, 83 S.W.3d
at 794.  The trial court=s findings of fact are binding on the
appellate court unless challenged on appeal. 
Hotel Partners, 847 S.W.2d at 632.  We may not disregard findings of fact if the
record contains some evidence from which inferences may be drawn, unless the
findings are so contrary to the overwhelming weight of the evidence as to be
manifestly wrong.  Experimental
Aircraft Ass=n, Inc., 76 S.W.3d at 503.  

We review the trial court=s conclusions of law as legal
questions.  BMC Software, 83
S.W.3d at 794.  While the appellant may
challenge the conclusions of law for factual insufficiency, we review the
conclusions of law drawn from the facts to determine their correctness.  Id. 
If we determine a conclusion of law is erroneous, but trial court
rendered a proper judgment, the erroneous conclusion of law does not require
reversal.  Id.  

Finding of Fact No. 1.a

$          Perna,
individually and on behalf of Mobile Medical, personally came to Texas numerous
times, to solicit business in Texas, purchase cadaver torsos in Texas, and
conducted seminars in Texas.








There is no evidence that Mobile Medical or Perna
individually arranged, facilitated, or conducted medical seminars in Texas
involving the use of torsos.  Any actions
by Perna were taken as an employee or officer of one of the entities.  Perna testified at deposition that Mobile
Medical participated in a medical seminar in Houston as a subcontractor and was
paid as a subcontractor.  There is no
evidence that Perna had been to Texas numerous times, but only on three
occasionsCtwo seminars at Baylor College of
Medicine and one meeting at Southwestern Medical School.  Nor is there any evidence that Perna or
Mobile Medical purchased any torsos. 
Another entity, IMET, arranged for the leasing of torsos for medical
seminars.  The torsos remained the
property of UTMB.  Although Perna had a
meeting at Southwestern University on behalf IMET, which was already obtaining
bodies from the medical school, to discuss the amount of lead time the school
needed to furnish a torso for a seminar, there is no evidence that Perna,
individually or on behalf of Mobile Medical, solicited business in Texas.

Finding of Fact 1.b

$          Perna,
individually and on behalf of Mobile Medical, purchased as many as 300 cadaver
torsos from UTMB, Southwest University, and other sources.

There is no evidence that either Perna or Medical Mobile
purchased any torsos; instead, IMET arranged for the lease of the torsos, which
remained the property of UTMB.  Mobile
Medical takes only temporary custody of the torsos during a medical
seminar.  

Finding of Fact 1.c

$          Perna,
individually and on behalf of Mobile Medical, shipped torsos purchased in Texas
to seminars that Perna and Mobile Medical conducted in Texas and other states.

Again, there is no evidence that either Perna nor Mobile
Medical purchased any torsos, and, as stated above, IMET arranged for the
leasing of the torsos for the medical seminars and Mobile Medical only took
temporary custody of the torsos during the seminars.  Perna made arrangements for the shipment,
furnishing, and disposition of torsos as an employee or officer of one of the
entities, not individually.  








Finding of Fact 1.d

$          Perna,
individually and on behalf of Mobile Medical, through a subsidiary company,
marketed the services of Mobile Medical in Texas.

There is no evidence that Perna personally marketed the
services of Medical Mobile in Texas or that there was any subsidiary company of
Mobile Medical.  

Finding of Fact 1.e

$          Perna,
individually and on behalf of Mobile Medical, came to Texas to negotiate the
purchase of torsos from Allen Tyler, a Texas citizen, and also contracted with
Tyler to perform consulting work both in and outside of Texas.

Again, there is no evidence that Perna or Mobile Medical
purchased any torsos or that Perna individually or Mobile Medical entered into
any contract with Tyler.  SBF, not Perna
or Mobile Medical, paid Tyler an honorarium as a consultant and for the preparation
of torsos for presentation at medical seminars. 


Finding of Fact 1.f

$          Perna,
individually and on behalf of Mobile Medical, paid Tyler well in excess of
$80,000.  The invoices Tyler presented
for his fees were mailed from Texas, and the payments from Perna and Mobile
were mailed to Texas.

There is no evidence that Perna or Mobile Medical paid Tyler
for his services; instead, the evidence shows that Tyler was a consultant to
SBF, which paid him an honorarium.  Similarly,
there is no evidence in the record of Tyler=s invoices for payment of his fees or
of any payments by Perna, Mobile Medical, or any other entity sent to
Tyler.  

Finding of Fact 1.g

$          Perna,
individually and on behalf of Mobile Medical, contracted with Dr. Zurawin for a
seminar at Baylor College of Medicine to work for Mobile Medical.








Perna testified at deposition that Dr. Zurawin taught a
course with IMET at Baylor College of Medicine in November 2001.  Perna also stated that Zurawin was the
primary person who administered that program. 
However, there is no evidence that Perna or Mobile Medical contracted
with Dr. Zurawin.  

Finding of Fact No. 2

$          Perna
hired Texas citizens, both over the phone and during trips to Texas to perform
various services at his seminars.

There is no evidence that Perna individually hired Texas
citizens over the phone or during trips to Texas to perform services at any
medical seminar.  Tyler, a Texas citizen,
was a consultant to SBF, which paid him an honorarium for his work at medical
seminars.  

Finding of Fact No. 3

$          Perna
acted as a corporate agent for Mobile Medical for the detailed activities
conducted in Texas.

Perna stated in his affidavit and at deposition that his work
performed for Mobile Medical (and the other entities) was in his capacity as an
employee or officer.  The evidence,
therefore, supports this finding.  

Finding of Fact No. 4

$          Other
employees of Mobile Medical came to Texas for a conference in 2001.

Perna testified at deposition that Mobile Medical
technicians, Mr. Neubert and Mr. Myers, came to the November 2001 seminar in
Houston.  Therefore, the evidence
supports this finding.  








We conclude the evidence does not support findings of fact
Nos. 1.a through 2 and, therefore, those findings do not support the exercise
of personal jurisdiction over Perna and Mobile Medical.  While the evidence supports findings of fact
Nos. 3 (Perna=s having acted on behalf of Mobile
Medical in Texas as an officer or employee) and 4 (Mobile Medical=s employees= working at a medical seminar in
Texas), as shown below those findings do not support the exercise of personal
jurisdiction over Perna and Mobile Medical. 


Among its conclusions of law, the pretrial court held that
Perna and Mobile Medical knowingly participated in the commission of activities
in Texas and failed to negate all possible bases for personal jurisdiction;
Perna=s and Mobile Medical=s contacts were knowingly and
intentionally directed at Texas and harm in Texas was foreseeable; Perna and
Mobile Medical are subject to specific jurisdiction in Texas because the cause
of action arises out of, and is related to, their contacts with Texas; and the
exercise of personal jurisdiction over Perna and Mobile Medical is consistent
with the constitutional requirements of due process and will not offend
principles of fair play and substantial justice.  

Due process consists of two components:  (1) whether the nonresident defendant has
purposefully established Aminimum contacts@ with the forum state; and (2) if so,
whether the exercise of jurisdiction comports with Afair play and substantial justice.@ 
Guardian Royal Exchange, 815 S.W.2d at 226 (citing Burger King
Corp. v. Rudzewicz, 471 U.S. 462, 475B76 (1985)).  








Under the minimum contacts analysis, we must determine
whether the nonresident defendant has purposefully availed itself of the
privilege of conducting activities within the forum state, thus invoking the
benefits and protections of the state=s laws.  Coleman, 83 S.W.3d at 806.  A nonresident defendant who has purposefully
availed itself of the privileges and benefits of conducting business in the
forum state has sufficient contacts with the forum to confer personal
jurisdiction on the court.  CSR Ltd.
v. Link, 925 S.W.2d 591, 594 (Tex.1996). 
The defendant=s activities, whether they consist of direct acts within
Texas or conduct outside Texas, must justify a conclusion that the defendant
reasonably could anticipate being called into a Texas court.  Coleman, 83 S.W.3d at 806.  The purposeful availment requirement insures
that the nonresident defendant=s contact must result from its purposeful conduct, not the
unilateral activity of the plaintiff or a third party.  Guardian Royal Exchange, 815 S.W.2d at
227.  

In determining whether a nonresident defendant has
purposefully established minimum contacts with the forum state, Aforeseeability@ is a significant consideration.  Although not an independent component of the
minimum-contacts analysis, foreseeability is implicit in determining whether
there is a Asubstantial connection@ between the defendant and the forum
state.  If a nonresident, by its actions
or conduct, has purposefully availed itself of the state=s benefits and the protections of its
laws, then it has established a substantial connection with the state and
subjected itself to the state=s jurisdiction.  Conner
v. ContiCarriers & Terminals, Inc., 944 S.W.2d 405, 410 (Tex. App.CHouston [14th Dist.] 1997, no writ)
(plurality op.) (citing Guardian Royal Exchange, 815 S.W.2d at 226B27). 


The nonresident defendant=s contacts can give rise to two types
of jurisdiction.  The first is specific
jurisdiction, which is established when the plaintiff=s cause of action arises out of, or
relates to, the defendant=s contacts with the forum state.  Id. 
The defendant=s activities must have been purposefully directed toward the
forum state.  Guardian Royal Exchange,
815 S.W.2d at 228.  Under specific
jurisdiction, the minimum-contacts analysis, focuses on the relationship among
the defendant, the forum, and the litigation. 
Id.  

The evidence shows Perna came to Texas on three occasionsCtwo medical seminars in Houston and
one meeting in DallasCon behalf of one of the entities.  There is no evidence that Perna and Mobile
Medical purchased any torsos from Tyler or anyone else at UTMB.  Instead, IMET arranged for the leasing of the
torsos and Mobile Medical received temporary custody of the torsos at the
medical seminars.  The evidence further
shows that none of donor bodies at issue in the six consolidated cases were
used in either the November 2001 or May 2002 medical seminars.  Similarly, the evidence does not indicate
that Perna=s visit to Southwestern University
was related in any way to UTMB=s willed body program. 
Finally, there is no evidence that Perna, in his individual capacity,
entered into any contract with UTMB, Tyler, or any other employee or agent of
UTMB.  








Appellees argue that Perna can be held individually liable
for tortious acts committed while working for Mobile Medical.  See Shapolsky v. Brewton, 56 S.W.3d
120, 133 (Tex. App.CHouston [14th Dist.] 2001, pet. denied) (stating general rule
that corporate agents are individually liable for fraudulent or tortious acts
committed while in the service of their corporation).  As discussed above, the evidence supports
finding of fact No. 3, i.e., Perna acted on behalf of Mobile Medical in
Texas.  However, even if we impute
liability for Perna=s activities performed on behalf of Mobile Medical as an
employee or officer to him individually, those contacts with Texas, as shown
above, are not sufficient to give rise to specific jurisdiction.[7]  

Appellees further contend Perna and Mobile Medical committed
torts in Texas.  However, committing a
tort in Texas alone does not give rise to personal jurisdiction over a
nonresident defendant.  Id. at
133.  Instead, there must be a
substantial connection between the contact and the cause of action in the forum
state.  Id.  There is no evidence that any of the torsos
used in either of the medical seminars belonged to the donors at issue in the
six consolidated cases in this appeal. 
We conclude Perna=s and Mobile Medical=s contacts with Texas are not
sufficient to confer specific jurisdiction. 









The second type of jurisdiction is general jurisdiction,
which is established by the defendant=s continuous and systematic contacts
with the forum.  Such contacts permit the
forum to exercise personal jurisdiction over the defendant even if the cause of
action did not arise from, or relate to, the defendant=s activities conducted within the
forum state.  Coleman, 83 S.W.3d
at 806; CSR Ltd., 925 S.W.2d at 595. 
Under general jurisdiction, the minimum-contacts analysis is more
demanding, requiring a showing of substantial activities within the forum
state.  Schlobohm, 784 S.W.2d at
357.  Each contact is not viewed in
isolation; instead, all contacts are carefully investigated, compiled, sorted,
and analyzed for proof of a pattern of continuing and systematic activity.  Coleman, 83 S.W.3d at 809.  

Perna states in his affidavit that he is a New Jersey
resident and he is not and has never been a resident of Texas; has never
maintained a registered agent in Texas; has never had any employees or agents
in Texas; has never maintained an office, mailing address, or telephone number
in Texas; has never owned any assets, maintained a bank account, or owned,
leased or controlled any real or personal property in Texas; has never paid or
been required to pay taxes in Texas; has never, in his individual capacity,
entered into a contract or conducted any business with any Texas business,
citizen or resident; and has never held any board of director=s, officer=s, or other official meeting in
Texas.  

In his capacity as an officer of Mobile Medical, Perna states
that Mobile Medical is a New Jersey limited liability company, which does not
and has never been required to maintain a place of business in Texas, but,
instead, maintains its offices in Pennsylvania, where it conducts its business
operations; it is not required to and has never maintained a registered agent
in Texas; except in November 2001, and May 2002, when IMET conducted two
medical seminars at Baylor College of Medicine in Houston, it does not have and
has never had any employees or agents in Texas; it has never maintained an
office, mailing address, or telephone number in Texas; it has never owned any
assets or maintained a bank account in Texas; it has never paid or been
required to pay taxes in Texas; except for certain torsos it leased from the
Willed Body Programs of UTMB and Southwestern University, it has never owned,
leased, rented, or controlled any real or personal property in Texas; and it
has never held any board of director=s, officer=s or other official meeting in
Texas.  








Appellees assert Perna came to Texas numerous times, on
behalf of Mobile Medical and other related entities, to solicit business, purchase
torsos, and conduct seminars.  They also
contend Perna purchased as many as 300 torsos in Texas over a four-year period,
at a total estimated cost of $360,000. 
Aside from the fact that there is no evidence that Perna came to Texas
on more than three occasions, and assuming that Perna purchased (or leased) 300
torsos over a four-year period, A>mere purchases, even if occurring at
regular intervals, are not enough to warrant a State=s assertion of in personam
jurisdiction over a nonresident corporation in a cause of action not related to
those purchase transactions.=@ 
Coleman, 83 S.W.3d at 808 (quoting Helicopteros Nacionales de
Colombia, S.A. v. Hall, 466 U.S. 408, 418 (1984)); see also Dalton v. R
& W Marine, Inc., 897 F.2d 1359, 1362 n.3 (5th Cir. 1990) (stating Apurchases and trips related thereto,
even if they occur regularly, are not, standing alone, a sufficient basis for
the assertion of jurisdiction@).  There is no
evidence that those 300 alleged purchases or leases are related to the
appellees= causes of action against Perna and
Mobile Medical; therefore, any such purchases or leases from Texas, standing
alone, will not support the exercise of general jurisdiction.  We conclude that Perna=s and Mobile Medical=s contacts in Texas do not constitute
continuous and systematic activities necessary to confer general jurisdiction.[8]  

We conclude the pretrial court erred in denying Perna=s and Mobile Medical=s special appearances.  Accordingly, the pretrial court order denying
Perna=s and Mobile Medical=s special appearances is reversed and
the six cases in this consolidated his appeal against Perna and Mobile Medical
are dismissed.

 

 

 

 

/s/        J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered
and Opinion filed March 17, 2005.

Panel consists of
Justices Anderson, Hudson, and Frost.











[1]  The donors
involved in this appeal are Imelda Billescas Romeros, Catherine Boileau Bland,
Janice Olivia Kelley, Leslie David Hogan, Dorothy Hebert, Hayden Hodges, Betty
Breezy, Michael Hargrave, Bonnie Stanford O=Neal,
Billie Kohlenberg, Edna Mahaffy, Billy Everett, George Davis Oliver, Sr., Linda
Porritt, James B. McCaslin, John Whitworth, Michael Graf, Paul Carrig, and
Pearl Ethel Purvis.  





[2]  Appellees in
this appeal are: 

Hogan
suit: Leslie Diane Hogan, David W.
Hogan, Donald A. Hogan, and Clifford E. Hogan; 

Butts
suit: Jean Butts, Individually and as
Representative of the Estate of Dorothy Hebert, James Nelson, Sue McKnight,
Heather Keithly, Amy McKnight, Sandra Clemons, Diana Hodges, Individually and
as Representative of the Estate of Hayden Hodges, Alden Hodges, Joe Stutzman,
David Stutzman, Linda DeLeon, Cherri Pellerin, Phylls Eckerson, Hilda Rodefeld,
Sherri Sonntag-Rodefeld, Emory Brockway, Michael Brockway, Christopher
Chatelain, Susan McHugh, John McHugh, Martha Harris, Leslie Koester, Tyra Yesh
Ochoa, Louis Shields, Chris Philips, Betty Brown, Susan Boatright, Tracy
Andrew, Shawn Melton, Davette Pickard, H. Dean Clark, Yola Clark, Willa Jayne,
Joel Aiston, Lavem [sic] Aiston, Pamela Bean, Jill Scoggins, and Francis
Matthews Henry;

Bland
suit: Robert Bland, Mary Hargreaves,
Michael Robert Bland, Patrick Boux Bland, and Robert Dallas Bland; 

Billescas suit: Ricardo Billescas,
Individually and as Representative of the Estate of Imelda Billescas Romeros,
Irma Young, Veronica Lopez, Yolanda B. Garcia, and Belia V. Zamora;

Harrison
suit: Patricia M. Harrison, Michael
C. Murphy, Billy G. Odom, B. Alan Odom, Lisa Odom, David P. Odom, Tamara L.
Odom, Gary B. Black, Charles H. McBride, Mike McBride, Johnna [sic] J.
Higginbotham, Tamara Stelly, Robert Thomas, Celeste Fontenot, Ruth Ahmed,
Barbara Erwin, Emily Erwin Hebert, Thomas Kelley Ewrin, Henry Blake Erwin,
Sidney A. Brown, Kerri Olivia Bettes, Individually and as Representative of the
Estate of Janice Olivia Kelley, and James K. McDow, Jr.; and 

Breezy
suit: Ted Breezy, Individually and as
Representative of the Estate of Elizabeth Ann Breezy, Joan Breezy Speer,
Kathleen Hagan, Victoria Quinn, Paul Hargrave, Individually and as
Representative of the Estate of Michael Hargrave, LeAnna Lankford, Individually
and as Representative of the Estate of Bonnie Standard O=Neal, Sandra Kohlenberg, Individually and as
Representative of the Estate of Billie Kohlenberg, Joann Cooper, Individually
and as Representative of the Estate of Edna Mahaffey, George Oliver, Jr.,
Individually and as Representative of the Estate of George Davis Oliver, Sr.,
Tana Everett, Clifton Everett, Individually and as Representative of the Estate
of Billy Everett, Daron C. McCaslin, Individually and as Representative of the
Estate of James B. McCaslin and Edna Pauline McCaslin, Todd Sisson,
Individually and as Representative of the Estate of Linda Porritt, Shad Sisson,
Brandi Landuyut, Harriet Whitworth, Individually and as Representative of the
Estate of John Whitworth, Samuel Whitworth, Barbara Hunt, Melinda Slaughter,
Individually and as Representative of the Estate of Michael Graf, Lacy Graf,
Andrew Graf, Helen Carrig, Individually and Representative of the Estate of
Paul Carrig, Theresa Carrig, Kay Callin, and Martin Carrig, Tina Vaughn,
Individually and as Representative of the Estate of Pearl Ethel Purvis, and
Kevin Tippie.  





[3]  Appellees also
sued, among a number of others, UTMB and the Anatomical Board.  





[4]  On April 21,
2003, the six cases in this consolidated appeal (among others) were assigned to
a pretrial court for consolidated pretrial proceedings pursuant to Rule 11 of
the Texas Rules of Judicial Administration. 
Tex. R. Jud. Admin. 11, reprinted
in Tex. Gov=t Code Ann., tit. 2, subtit. F. app. (Vernon 1998), amended
by Supreme Court order, Misc. Docket No. 03-9145, effective Aug. 31,
2003.  





[5]  The parties= use of the names ASouthwestern
University@ and ASouthwestern Medical School@ is presumably a reference to the University of Texas
Southwestern Medical Center at Dallas, which encompasses Southwestern Medical
School, Southwestern Graduate School of Biomedical Sciences, and Southwestern
Allied Health Sciences School.





[6]  Perna explains
that SAB numbers are assigned by the Anatomical Board to any torso received by
UTMB through its Willed Body Program.  





[7]  Perna and
Mobile Medical argue the fiduciary shield doctrine, which provides that
corporate officers are not subject to jurisdiction in a foreign forum when
their actions are taken in a representative capacity, precludes exercising
jurisdiction over Perna for any contacts he may have had as an officer of Mobile
Medical.  See Stern v. KEI
Consultants, Ltd., 123 S.W.3d 482, 487 (Tex. App.CSan Antonio 2003, no pet.); Shapolsky, 56
S.W.3d at 133 n.6; Brown v. General Brick Sales Co., 39 S.W.3d 291, 297B98 (Tex. App.CFort
Worth 2001, no pet.).  The Texas Supreme
Court has not explicitly adopted the fiduciary shield doctrine.  Moreover, thus far, it has been applied by
intermediate courts of appeals to preclude the exercise of general
jurisdiction, not specific jurisdiction. 
Stern, 123 S.W.2d at 488; Shapolsky, 56 S.W.3d at 133 n.6;
Brown, 39 S.W.3d at 300.





[8]  Because we do
not find that either Perna or Mobile Medical has the requisite minimum
contacts, we do not reach the fair play and substantial justice analysis.