**MICHIANA EASY LIVIN' COUNTRY INC. d/b/a Michiana R.V., Appellant,**

**v.**

**James G. HOLTEN, Appellee.**

**No. 01–02–00439–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 9, 2003.

Rehearing Overruled Nov. 21, 2003.

William G. Rossick, Watson & Rossickr, Austin, for appellant.

Neal David Kieval, Thomas M. Gregor, Brock C. Akers, Phillips & Akers, P.C., Houston, for appellee.

Panel consists of Chief Justice RADACK and Justices NUCHIA and HANKS.

## OPINION ON REHEARING

SHERRY RADACK, Chief Justice.

We withdraw our opinion of March 13, 2003 and issue the following in its stead. Appellant's motion for rehearing is granted.

This is an interlocutory, accelerated appeal from the trial court's denial of a special appearance filed by appellant, Michiana Easy Livin' Country, Inc. d/b/a Michiana R.V. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon Supp. 2003). Michiana argues that the trial court erred by denying its special appearance for the following reasons (1) the trial court did not have personal jurisdiction over Michiana because the Texas long-arm statute does not reach Michiana and (2) Michiana had not established the minimum contacts required by federal due process in order for Texas courts to assert jurisdiction over it. We affirm.

### Background

On July 14, 2001, appellee, James G. Holten, brought suit against Ford Motor Company, Coachmen Industries, Inc., Michiana, and Coachmen Recreational Vehicle Company. Holten alleged that he was a resident of Harris County, Texas and that the subject matter of his suit, a motor home, was also located in Harris County, Texas. Holten alleged that he had entered into a contract with Michiana to purchase a Class A Coachmen Catalina motor home manufactured by Coachmen and equipped with a Ford Engine and that he had taken delivery of the motor home in July 1998.

Holten alleged that, at the time he purchased the motor home, Michiana represented to him that (1) the motor home would be constructed with all solid wood material connected with screws, (2) the motor home's coach would not contain nails or staples, (3) the motor home would contain a bathtub and a shower, (4) the motor home would contain a double-pedal, foot-flush toilet, (5) the motor home could be serviced by any authorized Ford dealer, and (6) the motor home would comply with other specifications listed by Holten. Holten further alleged that these conditions were not met and that the breach of these conditions constituted a violation of the Texas Deceptive Trade Practices Consumer Protection Act, as well as common law fraud, breach of warranty, and breach of contract.

Ford Motor Company, Coachmen Recreational Vehicle Company, and Coachmen Industries, Inc. filed answers, but Michiana filed a special appearance and answered subject to its special appearance.

Michiana's special appearance asserted that the trial court did not have jurisdiction over it for the following reasons: (1) Michiana is an Indiana corporation that is not a resident of Texas, has no agent for service in Texas, has no property or employees in Texas, and is not authorized to do business in Texas; (2) Michiana does not advertise or have an Internet presence; (3) Holten contacted Michiana on his own initiative to arrange for Michiana to sell him a Coachmen motor home; (4) Michiana delivered the Coachmen motor home in Indiana to an independent third-party carrier who brought the motor home to Texas; (5) all communications between Michiana and Holten were conducted over the telephone; (6) all payments were made to Michiana in Indiana; (7) Holten was originally scheduled to accept delivery of the motor home in Indiana; and (8) the sales contract signed by Holten contained a forum selection clause designating Indiana as the forum state of all disputes arising from the sale of the motor home.

The trial court denied Michiana's special appearance.

## Special Appearance

### Standard of Review

The plaintiff bears the initial burden of pleading sufficient allegations to bring a non-resident defendant within the personal jurisdiction of a Texas court. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex.2002). A defendant bears the evidentiary burden of challenging the court's assertion of personal jurisdiction by negating all jurisdictional bases. *Id.* Existence of personal jurisdiction is a question of law, reviewed *de novo*, but that determination must sometimes be preceded by the resolution of underlying factual disputes. *Preussag Aktiengesellschaft v. Coleman*, 16 S.W.3d 110, 113 (Tex.App.Houston [1st Dist.] 2000, pet. dism'd w.o.j.). Although findings of fact are not required, *see* Tex.R.App. P. 28.1, if the trial court does not file findings of fact in a special appearance, all questions of fact are presumed to support the judgment. *Ace Ins. Co. v. Zurich Am. Ins. Co.*, 59 S.W.3d 424, 427 (Tex.App.Houston [1st Dist.] 2001, pet. denied).

### The Texas Long–Arm Statute

A Texas court may assert personal jurisdiction over a non-resident defendant only if the requirements of both the Texas long-arm statute and the United States Constitution are satisfied. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984); *CSR, Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996). The Texas long-arm statute allows a Texas court to exercise personal jurisdiction over

a non-resident defendant who does business in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1997). A non-resident does business in Texas if it:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2) commits a tort in whole or in part in this state; or

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

*Id.* In addition, the statute provides that "other acts" by the non-resident can satisfy the requirement of "doing business" in Texas. *Id.; Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991). The Texas Supreme Court has interpreted this broad statutory language to reach "as far as the federal constitutional requirements of due process will permit." *BMC,* 83 S.W.3d at 795. Therefore, the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *CSR,* 925 S.W.2d at 594.

**Federal Due Process Limitations on Personal Jurisdiction**

Under the limits of federal due process, a state may exert personal jurisdiction over a non-resident defendant only if the defendant has some minimum, purposeful contacts with the state, and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *Dawson–Austin v. Austin,* 968 S.W.2d 319, 326 (Tex.1998). A non-resident who has purposely availed himself of the privileges and benefits of conducting business in Texas has sufficient contacts with the forum to confer personal jurisdiction. *CSR,* 925 S.W.2d at 594. However,

a defendant should not be subject to the jurisdiction of a Texas court based upon random, fortuitous, or attenuated contacts. *Id.* at 595. The purposeful availment requirement ensures that the non-resident defendant's contact must result from its purposeful contact, not the unilateral activity of the plaintiff or a third party. *See Guardian Royal,* 815 S.W.2d at 227; *AmQuip Corp. v. Cloud,* 73 S.W.3d 380, 385 (Tex.App.-Houston [1st Dist.] 2002, no pet.). It is the quality and nature of the contacts, rather than their number, that is important. *Guardian Royal,* 815 S.W.2d at 230 n. 11. The exercise of personal jurisdiction is proper when the contacts proximately result from actions of the non-resident defendant which create a substantial connection with the forum state. *Id.* at 226.

*Foreseeability*

Foreseeability is an important, although not determinative, consideration in deciding whether the non-resident has purposefully established minimum contacts with the forum state. *CSR,* 925 S.W.2d at 595; *Guardian Royal,* 815 S.W.2d at 227. The concept of foreseeability is implicit in the requirement that there be a substantial connection between the non-resident defendant and Texas arising from actions or conduct of the non-resident defendant purposefully directed toward Texas. *Guardian Royal,* 815 S.W.2d at 227. If a tortfeasor knows that the brunt of the injury will be felt by a particular resident in the forum state, he must reasonably anticipate being haled into court there to answer for his actions. *Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc.,* 835 S.W.2d 645, 650 (Tex.App.-Houston [14th Dist.] 1992, no writ).

*General Jurisdiction*

A defendant's contacts with a forum can give rise to either general or

specific jurisdiction. *CSR*, 925 S.W.2d at 595. General jurisdiction is present when a defendant's contacts are continuous and systematic, allowing the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *Guardian Royal*, 815 S.W.2d at 228. General jurisdiction requires a showing that the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction. *Id.*

*Specific Jurisdiction*

Specific jurisdiction, however, is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *Id.* at 227. When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship between the defendant, the forum, and the litigation. *Blair Communications, Inc. v. SES Survey Equip. Services, Inc.*, 80 S.W.3d 723, 727 (Tex.App.–Houston [1st Dist.] 2002, no pet.); *Memorial Hosp. Sys.*, 835 S.W.2d at 650. The contacts must be purposely directed at or take place within the forum, and must have a "substantial connection" that results in the alleged injuries. *Id.* Merely contracting with a Texas citizen does not, by itself, satisfy the minimum contacts requirement. *Id.* However, even if a non-resident has a single contact with Texas, our courts may exercise specific jurisdiction if the contact is of substantial quality and nature and the cause of action arises out of that contact. *Ahadi v. Ahadi*, 61 S.W.3d 714, 719 (Tex.App.-Corpus Christi 2001, pet. denied); *Memorial Hosp. Sys.*, 835 S.W.2d at 650. The focus of the examination must be the nature of the contacts and the "nexus" these contacts create with the forum state. *Ring Power Sys. v. International De Comercio Y Consultoria*, 39 S.W.3d 350, 354 (Tex.

App.-Houston [14th Dist.] 2001, no pet.); *McDermott v. Cronin*, 31 S.W.3d 617, 621 (Tex.App.-Houston [1st Dist.] 2000, no pet.).

## Michiana's Contacts with Texas

Holten asserts that the trial court's jurisdiction is based on specific, not general jurisdiction. Accordingly, we focus our analysis on the issue of whether Michiana's contacts with Texas were sufficient to subject Michiana to specific jurisdiction. *See C–Loc Retention Systems, Inc. v. Hendrix*, 993 S.W.2d 473, 478 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

*Specific Jurisdiction*

Holten alleged that, during negotiations conducted via a telephone conversation that he initiated, Michiana made misrepresentations regarding the motor home it sold to him and that these misrepresentations constituted violations of the Texas Deceptive Trade Practices Act as well as common law fraud, breach of warranty, and breach of contract. In response, Michiana argued that it did not commit any act in Texas because (1) Michiana did not advertise in Texas or otherwise solicit Holten's business, (2) the phone call in which the sale of the motor home was completed was initiated by Holten, (3) Michiana did not deliver the motor home in Texas itself, but instead delivered the motor home in Indiana to an independent third party, who then brought the motor home to Texas, (4) all payments were made to Michiana in Indiana, and (5) all of Michiana conversations with Holten regarding the sale of the motor home were conducted over the telephone from Indiana. Next, Michiana argues that it could not reasonably have foreseen being subjected to jurisdiction in Texas because its contract with Holten included a forum selection clause specifying that any dispute would be brought in Indiana. Further,

Michiana refuted Holten's allegation that it committed a tort by arguing that the record "conclusively" established that Holten did not rely upon representations made during the phone call in reaching his decision to purchase the motor home.

When reviewing the trial court's ruling on Michiana's special appearance, we do not reach the merits of the underlying case. *See Ring Power Sys.*, 39 S.W.3d at 353. The purpose of a special appearance is not to determine liability, but whether the actions alleged by a plaintiff are of a type that suggest a defendant should expect to be subject to Texas jurisdiction. *See Mort Keshin & Co. v. Houston Chronicle Publ'g Co.*, 992 S.W.2d 642, 648 (Tex.App.-Houston [14th Dist.] 1999, no pet.). "Accordingly, where the plaintiff alleges an action in tort that arose out of an act committed in Texas, the necessary proof is only that the purposeful act was committed in this State." *Ring Power Sys.*, 39 S.W.3d at 353. Thus, we need not determine whether Holten actually relied on statements made during the telephone call with Michiana, nor need we determine whether those statements were, in fact, misrepresentations. Instead, we need only determine whether those jurisdictional facts were adequately alleged in Holten's pleadings and whether those allegations were sufficiently supported by the evidence presented to the trial court to sustain the court's ruling on Michiana's special appearance.

Michiana further contends that a specially appearing defendant may meet his jurisdictional burden by proving the nonexistence of a jurisdictional fact, even if such proof also disproves the existence of a necessary element of the plaintiff's cause of action. *See French v. Glorioso*, 94 S.W.3d 739, 746–47 (Tex.App.-San Antonio 2002, no pet.). Here, however, no reporter's record exists and the trial court did not issue findings of fact and conclusions of law. Accordingly, we must presume that the trial court resolved all factual disputes in Holten's favor, including whether Michiana made misrepresentations during the telephone conversation.

This case presents facts similar to those presented in *Ring Power Systems v. International De Comercio Y Consultoria.* In *Ring*, a Guatemala-based buyer of power generation modules for electricity plants, which had an office in Texas, sued a Florida-based seller of modules, claiming that the seller had misrepresented the capacity of the modules and breached its contract. 39 S.W.3d at 351. The court in *Ring* focused on the nexus created between the alleged misrepresentations and the subject matter of the suit. Because the seller knew that its misrepresentations were directed to and received by the buyer at its Houston office, the court held that Texas courts had specific jurisdiction over the suit arising out of those misrepresentations. *Id.* at 354.

Similarly, in *Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc.*, the Fourteenth Court of Appeals held that even a single contact made during a telephone conversation initiated by the plaintiff was enough to support the exercise of specific jurisdiction. In *Memorial*, as in *Ring*, the court focused upon the nexus between the contact and the cause of action. The plaintiff in *Memorial* was a hospital that treated a patient, relying upon a misstatement made by the defendant, a non-resident insurance company, that the patient was covered by worker's compensation insurance. The court in *Memorial* held that the allegation of a tort committed partially in Texas satisfied the long-arm statute. 835 S.W.2d at 648. Further, the court held that the nexus between the contact and the cause of action was strong enough to support specific jurisdiction, noting, that the "contact

with Texas itself was the basis for the cause of action." 835 S.W.2d at 650. The court stated that,

In the case at hand, there is a strong nexus between the tort that occurred in Texas and the contact with Texas. Memorial relied to its detriment on the alleged false information provided by Fisher during the telephone conversation. Fisher, acting in the course of its business, should have known that Memorial would rely on the information in deciding to provide treatment.... Therefore, Fisher is not denied due process by being subject to suit in Texas, because it allegedly committed a tort with a foreseeable economic injury in Texas.

835 S.W.2d at 650–51. Here, as in *Memorial*, the alleged misrepresentations made by Michiana in the phone call constitute both the contact with Texas and the basis for Holten's claims.

Finally, it was, or should have been, foreseeable to Michiana that it might become subject to the jurisdiction of Texas courts because Michiana knew Holten was a Texas resident and that the motor home would be used in Texas. While the forum selection clause in the sales contract is an indication that Michiana may have believed that any resulting litigation would be brought in Indiana, the clause is not controlling on the issue of foreseeability and does not outweigh Michiana's knowledge that it was speaking to a Texas resident and that the motor home it sold Holten would be sent to Texas.

In arguing that it did not have the minimum contacts necessary to support the trial court's exercise of jurisdiction, Michiana points us to two Texas cases: *Hayes v. Wissel*, 882 S.W.2d 97 (Tex.App.–Fort Worth 1994, no writ) and *Laykin v. McFall*, 830 S.W.2d 266 (Tex.App.-Amarillo 1992, orig. proceeding). In *Hayes*, a

Colorado resident advertised his airplane for sale in a widely circulated magazine. Hayes, a Texas resident, contacted the seller via telephone and was informed by the Colorado seller that the plane was in excellent condition. Hayes then telephoned the seller's mechanic, who was also in Colorado, to discuss the plane. Based on representations made to him by the seller and the mechanic, Hayes sent the seller a deposit on the plane. *Hayes*, 882 S.W.2d at 98. Unlike the present case, Hayes then went to Colorado to inspect the plane before paying the balance of the purchase price. During this inspection in Colorado, Hayes was shown a logbook detailing the inspections conducted by the seller's mechanic. Hayes relied on the logbook he saw in Colorado in taking possession of the plane. *Id.* at 98. In *Hayes*, the misrepresentations forming the basis of suit occurred both in Texas and in Colorado, and the court found that Hayes relied on the information he received while he was in Colorado when sustaining the seller's and the mechanic's special appearances. Accordingly, in *Hayes*, the nexus between the misrepresentations received in Texas and the underlying suit was not as strong as it is in the present case.

In *Laykin*, the Amarillo Court of Appeals held that a California resident who had agreed to sell a ring on consignment for a Texas resident did not have sufficient minimum contacts with Texas to be subject to personal jurisdiction. 830 S.W.2d 266. In *Laykin*, the Texas resident contacted the seller and asked him to sell her ring for her. After the Texas resident sent the ring to California, she found a buyer on her own. She then contacted the seller, who refused to return the ring and instead attempted to purchase the ring from her for his own use. The Texas resident sued, alleging conversion, fraud, and deceptive trade practices. In holding that the Cali-

fornia seller did not have the minimum contacts with Texas necessary for jurisdiction, the *Laykin* court held that the seller's actions did "not rise to the necessary level of an act or act purposefully directed at or aimed at Texas as a forum.... [I]n this case, Texas is not the focal point of the [seller's] actions." *Id.* at 270. In contrast to *Laykin,* Texas was the focal point of Michiana's actions—Holten, a Texas resident, received the misrepresentations made during the telephone call, and the motor home Michiana sold to Holten was to be used in Texas. Accordingly, we hold that Michiana has sufficient minimum contacts with the State of Texas to subject it to personal jurisdiction.

**Fair Play and Substantial Justice**

After deciding whether Michiana has sufficient minimum contacts to support the exercise of jurisdiction, we must also determine whether such an exercise of jurisdiction comports with our notions of fair play and substantial justice. *Ring Power Sys.,* 39 S.W.3d at 354. In making such a determination, we evaluate the following five factors: (1) the burden on Holten, (2) Texas's interest in adjudicating the dispute, (3) Michiana's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985); *Guardian Royal,* 815 S.W.2d at 228. In making this determination, "we bear in mind that only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the

forum state." *Ring Power Sys.,* 39 S.W.3d at 354.

Here, Texas has a strong interest in adjudicating this dispute because it involves both an alleged misrepresentation received in Texas by a Texas resident and a product that was sent into Texas that Michiana knew was to be used in Texas. Other than Texas and Indiana, no other state serves as a possible forum for adjudicating this dispute. Additionally, the other defendants named by Holten in his petition, Ford Motor Company, Coachmen Recreational Vehicle Company and Coachmen Industries, Inc., have already consented to jurisdiction in Texas, further establishing that Texas is the most convenient and efficient forum for Holten's suit. *Cf. Jones v. Beech Aircraft,* 995 S.W.2d 767, 774 (Tex.App.-San Antonio 1999, pet. dism'd w.o.j.). Finally, requiring litigation of this suit in Texas furthers the social policy of the states in protecting their residents from economic loss resulting from torts. *Cf. Ahadi,* 61 S.W.3d at 722. We find that the trial court's exercise of jurisdiction over Michiana would not offend notions of fair play and substantial justice. Accordingly, the trial court properly denied Michiana's special appearance.

**Conclusion**

We affirm the order of the trial court. Holten's motion to strike Michiana's Reply Brief, in whole or part, is denied. Holten's motion for leave to file a supplemental letter brief is granted. Michiana's motion to file a post-submission letter brief is granted. Michiana's motion for rehearing is granted. All other pending motions are dismissed as moot.[1]

Justice HANKS, concurring.

**1.** Pursuant to Texas Rule of Appellate Procedure 28.3, Michiana filed a motion for use of

GEORGE C. HANKS, JR., Justice, concurring.

I respectfully concur with the Opinion. While I agree that Michiana has sufficient minimum contacts with the State of Texas to subject it to personal jurisdiction, I do not find *Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc.,* 835 S.W.2d 645 (Tex. App.-Houston [14th Dist.] 1992, no writ) to be persuasive on this point.

Holten argues that, under the Fourteenth Court of Appeals' decision in *Memorial Hosp. Sys.,* we should find that the telephone conversation between Michiana and Holten had a sufficient nexus to Texas and to the alleged cause of action to support personal jurisdiction over Michiana. *See id.* at 650. In *Memorial,* a default judgment was entered after the defendant insurance company failed to answer. The trial court granted the insurance company's motion for new trial, and later granted its special appearance. Memorial appealed both the trial court's orders granting the special appearance and the motion for new trial—in that sequence. The Fourteenth Court of Appeals addressed the issues in the order presented and held that the trial court erred when it granted the special appearance and erred when it granted the motion for new trial. Because the court held that the motion for new trial was erroneously granted, any discussion relating to the special appearance is merely *obiter dictum.*

For this reason, I respectfully concur.

original papers. This rule applies to the use of sworn or uncontroverted papers forwarded by the trial court or of copies of such papers.

Because a clerk's record does exist for this cause, Michiana's motion is dismissed as moot.