COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



I & JC CORP. AND BAYSIDE BRUSH
CO. D/B/A CAMILA PARIS,

                           Appellants,

v.

HELEN OF TROY L.P.,

                           Appellee.

§

§

§

§

§
§


No. 08-04-00110-CV

Appeal from the

34th District Court

of El Paso County, Texas

(TC#2003-665)



O P I N I O N

           This is an appeal from the trial court’s denial of special appearance motions decided
against Appellants. For the reasons stated herein, we affirm the trial court’s finding that
jurisdiction in Texas is appropriate.
I. FACTUAL AND PROCEDURAL BACKGROUND 
           Appellant I & JC Corp. is a Florida corporation originally incorporated for the
business of retail sales of women’s hair accessories. Appellant Bayside Brush Co. was
subsequently created to focus on retail sales of hair accessories and I & JC transferred its
focus to the wholesale distribution of hair accessories. Appellant corporations are separate
corporate entities though they share officers and directors and have a close business
relationship.
           Appellee, Helen of Troy L.P. is a limited Texas partnership in the business of
supplying many types of hair and beauty products under various brand names. During the
late 1990’s, Appellants had a business relationship with the supplier of Karina products. 
Appellee acquired Karina in 1999. After the acquisition of Karina, the parties continued to
do business but Appellants contend that the terms and conditions for the placement of orders
for products and purchases was changed. A short time after the purchase, the relationship
ended over a dispute about the credit arrangement between the parties. Appellants were in
possession of several thousand dollars worth of hair products which they offered to return
for credit. Appellee refused the return and demanded payment. Appellants deny that they
owe any money for the merchandise and that their only obligation is to return the products.
           Subsequent to the end of the relationship, Appellants began marketing substantially
similar hair products under the name Camila Paris using what Appellee contends is the “trade
dress”


 being used by Appellee for Karina products. Appellee also contends that Appellants
have begun using, without permission, the name “Karina,” on the meta tags


 of their active
website. Appellants have sold, and continue to sell, products both in Texas and across the
nation, using the Camila Paris label which Appellee contends is a trade dress infringement. 
           Appellee sued Appellants in El Paso, Texas alleging violations of the Karina
trademark and trade dress protection, unfair competition, violation of the Texas Business and
Commerce Code, a breach of contract, requesting a declaratory judgment, and requesting
injunctive relief. Each Appellant filed a Special Appearance challenging jurisdiction of the
Texas courts. Appellee’s response to the special appearances asserted five grounds for
establishing jurisdiction over Appellants: (1) breach of contract, (2) trade dress infringement,
(3) trademark infringement, (4) interactive websites, and (5) alter ego.
           After a hearing on the special appearances, the trial court entered an order denying the
special appearances. Appellants filed a Motion for Entry of Findings of Fact and
Conclusions of Law. Plaintiff and Defendants filed Proposed Findings of Fact and
Conclusions of Law. The trial court did not file findings of fact or conclusions of law and
Appellants did not file a notice of past due findings of fact and conclusions of law.
           Appellants filed a Notice of Interlocutory Appeal and assert six issues.
II. ISSUES ON APPEAL
           In six issues, Appellants challenge the court’s denial of their special appearance. In
Issues One through Four, Appellants complain that the trial court erred in finding specific
and general jurisdiction as to each Appellant respectively. Issue Five complains that the trial
court erred in finding that Appellant Bayside was the alter ego of I & JC in submitting each
to jurisdiction because of the minimum contacts of each company. Issue Six complains
generally that the trial court’s finding of jurisdiction violates traditional notions of fair play
and substantial justice.
           We read these issues collectively as a challenge to the trial court’s implied findings
of fact and conclusions of law that there is sufficient evidence to subject both Appellants to
the jurisdiction of Texas courts on the grounds of minimum contacts, commission of a tort,
and alter ego, as a matter of law. Stated in the alternative, we read Appellants’ complaints
as a challenge that there is no or insufficient evidence to support the trial court’s decision
finding jurisdiction and denying the special appearance.
III. STANDARD OF REVIEW
           A trial court’s order granting or denying a special appearance under Tex. R. Civ. P.
120a is appealable as an interlocutory appeal. Tex. Civ. Prac. & Rem. Code Ann. §
51.014(a)(7) (Vernon Supp. 2004-05). The plaintiff bears the initial burden of pleading
sufficient allegations to bring a nonresident defendant within the provisions of the long-arm
statute. See McKanna v. Edgar, 388 S.W.2d 927, 930 (Tex. 1965). The special appearance
procedure requires that a defendant challenging a Texas court’s personal jurisdiction over
it must negate all jurisdictional bases. American Type Culture Collection, Inc. v. Coleman,
83 S.W.3d 801, 807 (Tex. 2002); Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203
(Tex. 1985). Once a plaintiff has properly plead sufficient jurisdictional facts, a defendant
must present evidence to rebut the jurisdictional allegations asserted because the burden has
shifted. Further, a plaintiff may present evidence of jurisdictional facts at the hearing on the
special appearance. See Zimmerman v. Glacier Guides, Inc., 151 S.W.3d 700, 704 
(Tex.App.--Waco 2004, no pet.).
            Whether a court has personal jurisdiction over a defendant is a question of law. BMC
Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). The trial court,
however, frequently must resolve questions of fact before deciding the jurisdiction question. 
Id. If a trial court enters an order denying a special appearance, and the trial court issues
findings of fact and conclusions of law, the appellant may challenge the fact findings on legal
and factual sufficiency grounds. Id.; see Hotel Partners v. KPMG Peat Marwick, 847
S.W.2d 630, 632 (Tex.App.--Dallas 1993, writ denied). The courts of appeals may review
the fact findings for both legal and factual sufficiency. BMC Software Belgium, N.V., 83
S.W.3d at 794; Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996).
           Appellate courts review a trial court’s conclusions of law as a legal question.
Hitzelberger v. Samedan Oil Corp., 948 S.W.2d 497, 503 (Tex.App.--Waco 1997, pet.
denied). The appellant may not challenge a trial court’s conclusions of law for factual
insufficiency; however, the reviewing court may review the trial court’s legal conclusions
drawn from the facts to determine their correctness. Templeton v. Dreiss, 961 S.W.2d 645,
656 n.8 (Tex.App.--San Antonio 1998, pet. denied); Dallas County v. Sweitzer, 881 S.W.2d
757, 763 (Tex.App.--Dallas 1994, writ denied). If the reviewing court determines a
conclusion of law is erroneous, but the trial court rendered the proper judgment, the
erroneous conclusion of law does not require reversal. Scholz v. Heath, 642 S.W.2d 554, 559
(Tex.App.--Waco 1982, no writ).
           When a trial court rules on a special appearance, the losing party should request
findings of fact and conclusions of law. Tex. R. Civ. P. 296; Daimler-Benz
Aktiengesellschaft v. Olson, 21 S.W.3d 707, 715 (Tex.App.--Austin 2000, pet. dism’d w.o.j.),
cert. denied, 535 U.S. 1077, 122 S.Ct. 1960, 152 L.Ed.2d 1021 (2002). When a trial court
does not issue findings of fact and conclusions of law with its special appearance ruling, all
facts necessary to support the judgment and supported by the evidence are implied. BMC
Software Belgium, N.V., 83 S.W.3d at 795; see Worford v. Stamper, 801 S.W.2d 108, 109
(Tex. 1990); Zac Smith & Co. v. Otis Elevator Co., 734 S.W.2d 662, 666 (Tex. 1987); In re
W.E.R., 669 S.W.2d 716, 717 (Tex. 1984). When the appellate record includes the reporter’s
and clerk’s records, these implied findings are not conclusive and may be challenged for
legal and factual sufficiency in the appropriate appellate court. BMC Software Belgium,
N.V., 83 S.W.3d at 795; Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex. 1989); Zac Smith
& Co., 734 S.W.2d at 666. When such points are raised, the standard of review to be applied
is the same as that to be applied in the review of jury findings or a trial court’s findings of
fact. Roberson, 768 S.W.2d at 281. For legal sufficiency points, if there is more than a
scintilla of evidence to support the finding, the no evidence challenge fails. BMC Software
Belgium, N.V., 83 S.W.3d at 795; Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 84
(Tex. 1992).
           We will set aside a finding of the trial court only if the finding is so against the great
weight and preponderance of the evidence as to be manifestly erroneous or unjust. In re
King’s Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); Runnells v. Firestone, 746 S.W.2d
845, 849 (Tex.App.--Houston [14th Dist.] 1988, writ denied). In reviewing such a point of
error, we must consider and weigh all of the evidence, both the evidence that tends to prove
the existence of a vital fact as well as evidence that tends to disprove its existence. See In
re King’s Estate, 244 S.W.2d at 665; Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). In
considering the evidence, if a finding is so contrary to the great weight and preponderance
of the evidence as to be manifestly unjust, the finding should be set aside, regardless of
whether some evidence supports it. Watson v. Prewitt, 159 Tex. 305, 320 S.W.2d 815, 816
(1959); In re King’s Estate, 244 S.W.2d at 661.
           If evidence supports the implied findings of fact, we must uphold the trial court’s
judgment on any legal theory supported by the findings. Worford v. Stamper, 801 S.W.2d
108, 109 (Tex. 1990); Goodenbour v. Goodenbour, 64 S.W.3d 69, 75-76 (Tex.App.--Austin
2001, pet. denied); Point Lookout West, Inc. v. Whorton, 742 S.W.2d 277, 278 (Tex. 1987);
Runnells, 746 S.W.2d at 848. This is so regardless of whether the trial court articulates the
correct legal reason for the judgment. Harrington v. Railroad Comm’n, 375 S.W.2d 892, 895
(Tex. 1964); Goodenbour, 64 S.W.3d at 76; Fish v. Tandy Corp., 948 S.W.2d 886, 892
(Tex.App.--Fort Worth 1997, writ denied); Marifarms Oil & Gas, Inc. v. Westhoff, 802
S.W.2d 123, 125 (Tex.App.--Fort Worth 1991, no writ). We review the legal conclusions
supporting the judgment to determine whether they are correct as a matter of law. 
Goodenbour, 64 S.W.3d at 76; Lawrence v. Kohl, 853 S.W.2d 697, 699 (Tex.App.--Houston
[1st Dist.] 1993, no writ).
           Although findings of fact are not required, see Tex. R. App. P. 28.1, if the trial court
does not file findings of fact in a case challenging a special appearance, all questions of fact
are presumed to support the judgment. Michiana Easy Livin’ Country Inc. v. Holten, 127
S.W.3d 89, 94 (Tex.App.--Houston [1st Dist.] 2003, pet. granted); Ace Ins. Co. v. Zurich Am.
Ins. Co., 59 S.W.3d 424, 427 (Tex.App.--Houston [1st Dist.] 2001, pet. denied).
           Further, the losing party is required to bring the trial court’s failure to the attention of
the trial court. Texas Rule of Civil Procedure 297 provides, in part, the following:
If the court fails to file timely findings of fact and conclusions of law, the party
making the request shall, within thirty days after filing the original request, file
with the clerk and serve on all other parties in accordance with Rule 21a a
“Notice of Past Due Findings of Fact and Conclusions of Law” which shall be
immediately called to the attention of the court by the clerk. Such notice shall
state the date the original request was filed and the date the findings and
conclusions were due.
 
Tex. R. Civ. P. 297.
           The failure to file a notice of past due findings of fact waives the right to complain
about the trial court’s failure to file findings of fact and conclusions of law. See Curtis v.
Commission for Lawyer Discipline, 20 S.W.3d 227, 232 (Tex.App.--Houston [14th Dist.]
2000, no pet.); Las Vegas Pecan & Cattle Co. v. Zavala County, 682 S.W.2d 254, 255 (Tex.
1984). No such notice appears in the record of this case. Although the record shows that
each party filed Proposed Findings of Fact and Conclusions of Law and Appellants noted in
their Notice of Interlocutory Appeal that “Appellants timely filed a request for findings of
fact and conclusions of law, which the trial court has yet to file” they did not file the Notice
required by Rule 297 of the Texas Rules of Civil Procedure. See Tex. R. Civ. P. 297.
           If the appellant does not challenge the trial court’s findings of fact, when filed, these
facts are binding upon both the party and the appellate court. Wade v. Anderson, 602 S.W.2d
347, 349 (Tex.Civ.App.--Beaumont 1980, writ ref’d n.r.e.). Accordingly, it is incumbent for
the appellant to attack the findings by appropriate legal and factual sufficiency points of
error. Lovejoy v. Lillie, 569 S.W.2d 501, 504 (Tex.Civ.App.--Tyler 1978, writ ref’d n.r.e.). 
           It would have been helpful for the court to have articulated its findings of facts and
conclusions of law but because no findings of fact or conclusions of law were filed in this
case, we will presume that the trial court found all necessary facts to support the judgment. 
After review of the appellate record, however, we determine that there is ample evidence to
support the trial court’s implied findings and its implied findings are not against the great
weight and preponderance of the evidence.
IV. PERSONAL JURISDICTION-THE TEXAS LONG-ARM STATUTE
           A Texas court may assert personal jurisdiction over a non-resident defendant only if
the requirements of both the Texas long-arm statute and the United States Constitution are
satisfied. See Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-.045 (Vernon 1997 and Supp.
2004-05); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14, 104
S.Ct. 1868, 1871-72, 80 L.Ed.2d 404 (1984); CSR, Ltd. v. Link, 925 S.W.2d 591, 594 (Tex.
1996). A non-resident does business in Texas if it:
(1) contracts by mail or otherwise with a Texas resident and either party is to
perform the contract in whole or in part in this state;
 
(2) commits a tort in whole or in part in this state; or
 
(3) recruits Texas residents, directly or through an intermediary located in this
state, for employment inside or outside this state.

Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997).
           In addition, the statute provides that “other acts” by the non-resident can satisfy the
requirement of “doing business” in Texas. Id.; Guardian Royal Exch. Assurance, Ltd. v.
English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991). The Texas Supreme Court
has interpreted this broad statutory language to reach as far as the federal constitutional
requirements of due process will permit. BMC Software Belgium, N.V., 83 S.W.3d at 795. 
Therefore, the requirements of the Texas long-arm statute are satisfied if the exercise of
personal jurisdiction comports with federal due process limitations. CSR, Ltd., 925 S.W.2d
at 594.
           Personal jurisdiction over nonresident defendants is constitutional when two
conditions are met: (1) the defendant has established minimum contacts with the forum state,
and (2) the exercise of jurisdiction comports with traditional notions of fair play and
substantial justice. See International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct.
154, 90 L.Ed. 95 (1945). A nonresident defendant that has “purposefully availed” itself of
the privileges and benefits of conducting business in the foreign jurisdiction has sufficient
contacts with the forum to confer personal jurisdiction. Burger King Corp. v. Rudzewicz, 471
U.S. 462, 474-76, 105 S.Ct. 2174, 2183-84, 85 L.Ed.2d 528 (1985) (discussing the
constitutional boundaries of personal jurisdiction). Although not determinative,
foreseeability is an important consideration in deciding whether the nonresident defendant
has purposefully established “minimum contacts” with the forum state. Guardian Royal, 815
S.W.2d at 227. A defendant, however, should not be subject to a foreign court’s jurisdiction
based upon “random,” “fortuitous,” or “attenuated” contacts. Burger King, 471 U.S. at 475,
105 S.Ct. at 2183.
A. Minimum Contacts
           Personal jurisdiction exists if the nonresident defendant’s minimum contacts give rise
to either specific jurisdiction or general jurisdiction. Helicopteros Nacionales de Colombia,
S.A., 466 U.S. at 413-14, 104 S.Ct. at 1871-72; BMC Software Belgium, N.V., 83 S.W.3d at
795; Guardian Royal, 815 S.W.2d at 226. Specific jurisdiction is established if the
defendant’s alleged liability arises from or is related to an activity conducted within the
forum. BMC Software Belgium, N.V., 83 S.W.3d at 796; Guardian Royal, 815 S.W.2d at
227. In contrast, general jurisdiction is present when a defendant’s contacts in a forum are
continuous and systematic so that the forum may exercise personal jurisdiction over the
defendant even if the cause of action did not arise from or relate to activities conducted
within the forum state. BMC Software Belgium, N.V., 83 S.W.3d at 796; Guardian Royal,
815 S.W.2d at 228; Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990). Therefore,
we must determine that there are either minimum contacts sufficient to confer specific
jurisdiction or continuous and systematic contacts sufficient to confer general jurisdiction.
           To establish specific jurisdiction, the cause of action must arise out of or relate to the
nonresident defendant’s contact with the forum state, and the conduct must have resulted
from that defendant’s purposeful conduct, not the unilateral conduct of the plaintiff or others.
TeleVentures, Inc. v. International Game Technology, 12 S.W.3d 900, 907 (Tex.App.--Austin
2000, pet. denied). Thus, in analyzing minimum contacts for the purpose of determining
Texas courts’ specific jurisdiction, we focus on the relationship among the defendant, the
forum, and the litigation. Id. at 908; Michiana Easy Livin’ Country Inc., 127 S.W.3d at 96;
Blair Communications, Inc. v. SES Survey Equip. Services, Inc., 80 S.W.3d 723, 727
(Tex.App.--Houston [1st Dist.] 2002, no pet.); Memorial Hosp. System v. Fisher Ins. Agency,
Inc., 835 S.W.2d 645, 650 (Tex.App.--Houston [14th Dist.] 1992, no writ). The contacts
must be purposely directed at or take place within the forum, and must have a “substantial
connection” that results in the alleged injuries. Michiana Easy Livin’ Country Inc., 127
S.W.3d at 96.
           Under the minimum contacts test for specific jurisdiction, we must determine whether
appellee has had purposeful contacts with the forum state, thus invoking the benefits and
protections of its laws. Guardian Royal, 815 S.W.2d at 226. This requirement ensures that
a nonresident defendant will not be haled into a jurisdiction based solely upon random or
fortuitous contacts or the “unilateral activity of another party or a third person.” Id. As long
as the contact creates a substantial connection with the forum state, even a single act can
support jurisdiction, but a single act or occasional acts may be insufficient to establish
jurisdiction if their nature and quality and the circumstances of their commission create only
an attenuated connection with the forum. Burger King, 471 U.S. at 476 n.18, 105 S.Ct. at
2184. In determining whether a nonresident defendant’s contacts are random and fortuitous,
the Texas Supreme Court has looked at whether the contacts are based upon the unilateral
acts of the plaintiff or if the defendant participated in an act that resulted in a contact. CSR,
Ltd., 925 S.W.2d at 595.
           Merely contracting with a Texas citizen does not, by itself, satisfy the minimum
contacts requirement. Michiana Easy Livin’ Country Inc., 127 S.W.3d at 96. However, even
if a non-resident has a single contact with Texas, our courts may exercise specific jurisdiction
if the contact is of substantial quality and nature and the cause of action arises out of that
contact. Id.; Ahadi v. Ahadi, 61 S.W.3d 714, 719 (Tex.App.--Corpus Christi 2001, pet.
denied); Memorial Hosp. Sys., 835 S.W.2d at 650. The focus of the examination must be the
nature of the contacts and the “nexus” these contacts create with the forum state. Michiana
Easy Livin’ Country Inc., 127 S.W.3d at 96; Ring Power Sys. v. International De Comercio
Y Consultoria, 39 S.W.3d 350, 354 (Tex.App.--Houston [14th Dist.] 2001, no pet.);
McDermott v. Cronin, 31 S.W.3d 617, 621 (Tex.App.--Houston [1st Dist.] 2000, no pet.).
B. Contacts with Texas
           The trial court entered a general order denying the special appearance of the parties. 
Due to its general nature, we assume that the trial court made the appropriate factual findings
and conclusions of law to support a finding of both specific and general jurisdiction of Texas
courts over Appellants. Initially, we focus our analysis on the issue of whether Appellants’
contacts with Texas were sufficient to subject Appellants to specific jurisdiction. See
Michiana Easy Livin’ Country Inc., 127 S.W.3d at 94; see also C-Loc Retention Systems, Inc.
v. Hendrix, 993 S.W.2d 473, 478 (Tex.App.--Houston [14th Dist.] 1999, no pet.).
C. Specific Jurisdiction
           Appellee alleged that Appellants have committed acts that constitute doing business
in the state of Texas such that they could reasonably have expected to be subject to the
jurisdiction of Texas courts. Appellee plead that Appellants entered into a contract with
Appellee, a Texas resident, with the intention of purchasing products from Appellee and
agreed to pay for the products in Texas. Appellee contends that the contractual basis for the
relationship between the parties may be one factor considered by the courts in determining
that minimum contacts existed between Appellants and Texas. Further, Appellee alleges that
Appellants committed certain torts against them in Texas. The torts complained of are the
trade dress infringement and trademark infringement. The trade dress infringement allegedly
occurred upon the sale of goods in Texas designed and packaged to resemble Appellee’s
Karina product line, and the trademark infringement occurred through the use of Appellee’s
Karina trademark in the meta tag of the Bayside web page. Appellants admitted that they
sold products to Texas stores. Appellee contends and the trial court found by implication,
that the contractual relationship, the sale of products in Texas stores and the allegations of
tortious contact is sufficient to establish minimum contacts between Appellants and Texas. 
Appellants had the burden of negating the foregoing bases for personal jurisdiction. See
Kawasaki Steel Corp., 699 S.W.2d at 203.
           We recognize that the act of entering into a contract and the subsequent breach of a
contract, without more, is not necessarily sufficient to confer jurisdiction on the Texas courts. 
See TeleVentures, Inc., 12 S.W.3d at 908. The record reflects, and we must presume that the
trial court found, that the parties had entered into a contract whereby the Appellants ordered
products from the Texas Appellee, agreed to pay for the products in Texas, and sent various
communications back and forth between the parties regarding the agreement and that the
contractual basis for supporting the cause of action was based on more than the mere entering
into a contract with a Texas resident. Looking to the evidence which supports the implied
findings of the trial court, we cannot say that the trial court’s implied finding of minimum
contacts because of the agreement to perform and subsequent breach of the Texas contract
is manifestly unjust.
           Turning to the issue of the commission of the torts, we agree with Appellee that there
is sufficient evidence in the record to support the trial court’s implied finding that the tort of
trade dress and trademark infringement were committed in Texas. The record reflects some
evidence that Appellants sold products in Texas and that the sale of such products would
constitute trade dress infringement. Again recognizing that our review is limited by the lack
of findings, we cannot say that the implied finding is manifestly unjust or unsupported by the
record. We do not reach the underlying merits of the case we look only to whether the trial
court’s decision is erroneous as a matter of law. See Ring Power Sys., 39 S.W.3d at 353.
           Appellants admitted that Bayside included a meta tag on the Bayside website which
contained, without the permission of Appellee, the Karina trademark. We agree with
Appellee that the use, without permission of another’s trademark in a meta tag may constitute
trademark infringement. See Horphag Research Ltd., 337 F.3d at 1040; Playboy Enterprises, 
Inc. v. Calvin Designer Label, 985 F.Supp. 1220, 44 U.S.P.Q. 2d 1156 (N.D. Cal. 1997).
           We review the evidence related to Appellants’ websites to determine whether it is
sufficient to support the implied findings of specific and general jurisdiction by the trial
court. “Internet use is characterized as falling within three categories on a sliding scale for
purposes of establishing personal jurisdiction.” Michel v. Rocket Engineering Corp., 45
S.W.3d 658, 677 (Tex.App.--Fort Worth 2001, no pet.), citing Jones v. Beech Aircraft Corp.,
995 S.W.2d 767, 772 (Tex.App.--San Antonio 1999, pet. dism’d w.o.j.). At one end of the
scale are websites clearly used for transacting business over the internet, such as entering into
contracts and knowing and repeated transmission of files of information, which may be
sufficient to establish minimum contacts with a state. Id. On the other end of the spectrum
are “passive” websites that are used only for advertising over the internet and are not
sufficient to establish minimum contacts even though they are accessible to residents of a
particular state. Id. In the middle are “interactive” websites that allow the “exchange” of
information between a potential customer and a host computer. Id. Jurisdiction in cases
involving interactive websites is determined by the degree of interaction. Id. Texas courts
have used this test in determining whether an internet site is sufficient to support the exercise
of general jurisdiction over a defendant. See, e.g., Townsend v. Univ. Hosp.-Univ. of Colo.,
83 S.W.3d 913, 922 (Tex.App.--Texarkana 2002, pet. denied); Experimental Aircraft Ass’n,
Inc. v. Doctor, 76 S.W.3d 496, 506-07 (Tex.App.--Houston [14th Dist.] 2002, no pet.);
Gessmann v. Stephens, 51 S.W.3d 329, 338-39 (Tex.App.--Tyler 2001, no pet.); Michel, 45
S.W.3d at 677; Riviera Operating Corp. v. Dawson, 29 S.W.3d 905, 911 (Tex.App.--Beaumont 2000, pet. denied); Daimler-Benz Aktiengesellschaft, 21 S.W.3d at 725.
           The record provides evidence that the Bayside website is interactive, i.e., that
individuals may order off the website. The Bayside website provides access to Texas
customers like any other user of the internet. Evidence was presented to the trial court
regarding the operation of the website, which included evidence of payments made to various
search engines to direct users to the websites, and the method for placement of orders. The
Camila Paris products are available to Texas residents through the website. There is
sufficent evidence presented to support the trial court’s implied finding that the Bayside
website is interactive and more than merely a passive site subjecting the corporate entity to
the jurisdiction of Texas courts.
D. Alter Ego
           We also agree that the record contains sufficient evidence to support the trial court’s
implied finding that Bayside was the alter ego of I & JC thereby imputing its tortious conduct
to I & JC under the alter ego theory.
           Personal jurisdiction may exist over a nonresident defendant if the relationship
between the foreign corporation and its parent corporation that does business in Texas is one
that would allow the court to impute the parent corporation’s “doing business” to the
subsidiary. Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1159 (5th Cir. 1983); Walker v.
Newgent, 583 F.2d 163, 167 (5th Cir. 1978); BMC Software Belgium, N.V., 83 S.W.3d at
798. The rationale for exercising jurisdiction is that “the parent corporation exerts such
domination and control over its subsidiary ‘that they do not in reality constitute separate and
distinct corporate entities but are one and the same corporation for purposes of jurisdiction.’” 
Hargrave, 710 F.2d at 1159 (citations omitted); BMC Software Belgium, N.V., 83 S.W.3d at
798. The party seeking to ascribe one corporation’s actions to another by disregarding their
distinct corporate entities must prove this allegation. Walker, 583 F.2d at 167; BMC
Software Belgium, N.V., 83 S.W.3d at 798; see also Lucas v. Texas Indus., Inc., 696 S.W.2d
372, 375 (Tex. 1984). This is because Texas law presumes that two separate corporations
are indeed distinct entities:
The general rule seems to be that courts will not because of stock ownership
or interlocking directorship disregard the separate legal identities of
corporations, unless such relationship is used to defeat public convenience,
justify wrongs, such as violation of the anti-trust laws, protect fraud, or defend
crime.

Bell Oil & Gas Co. v. Allied Chem. Corp., 431 S.W.2d 336, 339 (Tex. 1968) (citations
omitted).
           To “fuse” the parent company and its subsidiary for jurisdictional purposes, the
plaintiffs must prove the parent controls the internal business operations and affairs of the
subsidiary. BMC Software Belgium, N.V., 83 S.W.3d at 799. But the degree of control the
parent exercises must be greater than that normally associated with common ownership and
directorship; the evidence must show that the two entities cease to be separate so that the
corporate fiction should be disregarded to prevent fraud or injustice. BMC Software Belgium,
N.V., 83 S.W.3d at 799; see Hargrave, 710 F.2d at 1160; Conner v. ContiCarriers and
Terminals, 944 S.W.2d 405, 419 (Tex.App.--Houston [14th Dist.] 1997, no writ); see also
Gentry v. Credit Plan Corp. of Houston, 528 S.W.2d 571, 573 (Tex. 1975).
           As evidence of alter ego, Appellee contends first that the two corporate Appellants
are closely related entities. The evidence reflected that the individuals Jorge Castillo and
Ivan Lopez are partners in the business operations of Bayside and I & JC. I & JC sells
Camila Paris products through Bayside. The companies share the same offices, address,
telephone number, officers, directors, and shareholders. Jorge Castillo, the president of I &
JC controls the daily operations of Bayside but receives a paycheck only from I & JC. The
financial operations of the companies are handled as one corporation. In short, the record
is replete with examples of overlap between the two entities such that there is more than
sufficient evidence for the trial court to have found that each corporation is the alter ego of
the other and any minimum contacts of one may be imputed to the other.
           This record shows such unity between the two corporations that the separateness of
the corporations is virtually non-existent. Accordingly, we hold that the evidence is
sufficient to support the trial court’s implied finding that I & JC is the alter ego of Bayside
and Bayside is the alter ego of I & JC. For this reason, the trial court was correct in denying
the special appearances on the grounds that it had general jurisdiction over the Appellants
as a result of the doctrine of alter ego.
           When reviewing the trial court’s ruling on Appellants’ special appearances, we do not
reach the merits of the underlying case. See Ring Power Sys., 39 S.W.3d at 353. The
purpose of a special appearance is not to determine liability, but whether the actions alleged
by a plaintiff are of a type that suggest a defendant should expect to be subject to Texas
jurisdiction. See Mort Keshin & Co. v. Houston Chronicle Publ’g Co., 992 S.W.2d 642, 648
(Tex.App.--Houston [14th Dist.] 1999, no pet.). “Accordingly, where the plaintiff alleges
an action in tort that arose out of an act committed in Texas, the necessary proof is only that
the purposeful act was committed in this State.” Ring Power Sys., 39 S.W.3d at 353. Thus,
we need not determine whether a breach of contract actually occurred in Texas or whether
the allegations of trade dress or trademark infringements actually are in fact trade dress or
trademark infringements; rather, we focus on the fact that the underlying conduct occurred
here in Texas. Instead, we need only determine whether those jurisdictional facts were
adequately alleged in Appellee’s pleadings and whether those allegations were sufficiently
supported by the evidence presented to the trial court to sustain the court’s ruling on
Appellants’ special appearances.
           Appellants contend that they have presented sufficient evidence to negate the
jurisdictional facts found by the trial court. Because the trial court did not issue findings of
fact and conclusions of law, however, we must presume that the trial court resolved all
factual disputes in Appellee’s favor.
           We are persuaded that the record in the trial court provided ample evidence to support
its implied findings and conclusions that Appellants had sufficient minimum contacts with
the state of Texas to justify either specific or general jurisdiction, that each corporation
functions as the alter ego of the other, and that any torts committed by one may be imputed
to the other. We recognize that we must focus on the nexus between the contact and the
cause of action asserted. We are persuaded that the actions of the Appellants in trade dress
infringement and trademark infringement are intimately involved with the Appellants’
contacts with Texans, specifically through their repeated and continuous solicitation of Texas
customers. The allegation of tort, particularly via the forum of their interactive website, is
sufficient to implicate the need for Texas to provide a forum for redress to its citizens.
           Finally, we consider whether the trial court’s determination violates principals of fair
play and substantial justice.
E. Fair Play and Substantial Justice
           Having found that Appellants had sufficient minimum contacts with Texas, we next
turn to whether the exercise of jurisdiction in Texas is reasonable. To determine whether
jurisdiction is reasonable, we evaluate the following factors: (1) the burden on the appellee,
(2) Texas’s interest in adjudicating the dispute, (3) appellant’s interest in obtaining
convenient and effective relief, (4) the interstate judicial system’s interest in obtaining the
most efficient resolution of controversies, and (5) the shared interest of the several states in
furthering fundamental substantive social policies. Burger King, 471 U.S. at 477, 105 S.Ct.
at 2184; Guardian Royal, 815 S.W.2d at 231.
           There is no evidence in the record showing that litigation in Texas would be unfair
or unreasonable to Appellants. Although there is a significant geographical distance between
the parties’ business offices, distance alone is not sufficient to defeat jurisdiction. Guardian
Royal, 815 S.W.2d at 231. The parties have regularly done business with Texas entities and
intend to market to Texas through their interactive website. The torts, the trade dress
infringement, and the use of the Karina trademark were intended to solicit sales from 
individuals searching for hair and beauty products. Texas has an interest in protecting Texas
companies from the business torts of competitors doing business in our state.
           Thus, we conclude that Appellants’ contacts with Texas are sufficient, particularly
considering the quality and nature of their contacts, to confer specific jurisdiction over them.
Furthermore, subjecting Appellants to the jurisdiction of Texas courts is reasonable under
the circumstances and does not offend the traditional notions of fair play and substantial
justice. Given the companies’ activities and voluntary use of the Karina trademark on their
interactive website, Appellants should reasonably anticipate being haled into court in Texas
in a suit pertaining to the torts of trade dress infringement and trademark infringement. 
Accordingly, we overrule Appellants’ Issues One through Six.
           Having overruled each of Appellants’ issues, we affirm the judgment of the trial
court.
 
                                                                  RICHARD BARAJAS, Chief Justice
May 26, 2005

Before Panel No. 2
Barajas, C.J., McClure, and Chew, JJ.